JOHN BECKER v. CYRENIUS C. TORRANCE.

A judgment creditor, having levied his execution upon chattels of the debtor, has a claim superior to another creditor who has only obtained an order for the examination of the debtor in proceedings supplementary to execution.

Where a judgment creditor is pursuing his legal remedy by execution, something more than a notice, or a *lis pendens*, is required to prejudice his levy.

The receiver of the debtor's property, appointed in supplementary proceedings, and after the goods had been levied upon by another creditor, holds subject to such levy; and will be liable upon his promise made to the officer to sell and apply proceeds, &c., upon the execution levied.

The plaintiff in execution, acquiescing in the promise made to the officer, &c., may maintain an action upon the same.

The title of the receiver only relates back to the date of the order appointing him.

The issuing and service of an order instituting proceedings supplementary to execution create no lien against other creditors who, in the meantime, discover property subject to execution, and levy upon the same.

THIS action was brought on an alleged parol promise made by the defendant to an under sheriff of Cattaraugus county for the benefit of the plaintiff. The plaintiff was a judgment creditor of Thomas J. Parker, a merchant of that county, who, on the 11th July, 1854, being insolvent, made an assignment to his brother, F. B. Parker, of all his personal property for the benefit of his creditors, with preferences. The assignment was fraudulent and void on account of a provision permitting the assignee to sell the goods on credit, and because no possession under it was taken; but the assignee was permitted to sell as he had done before it was executed.

The plaintiff recovered his judgment in the Supreme Court, on a debt existing before the assignment, on the 13th of October following; and on the 16th day of the same month, an execution thereon was delivered to Gardner, a deputy sheriff, who, on the same day, levied upon the stock of goods of the debtor, and gave him notice of such levy.

Prior to the recovery of the plaintiff's judgment, but subsequent to the assignment, two other judgments had been recovered against T. J. Parker, by other creditors, for

$738.65 and $185.57 respectively. Executions were issued on both these judgments, which were returned unsatisfied, no levy having been made under either of them.

. On the 4th October, the plaintiff in the larger one of the prior judgments, obtained an order from the county judge, requiring the debtor to appear before him and answer concerning his property, and the order forbade him to transfer or interfere with any part of it, not exempt from execution. This order was served on the debtor the 12th day of the same month. A similar order was made upon the application of the plaintiffs in the other of those judgments. Both orders were returnable on the 24th October. The debtor appeared and was examined pursuant to the orders, and on the 25th October, the county judge, by orders made in the two actions, appointed the defendant in the present action a receiver of the property of the debtor, who was directed to assign his property and effects to such receiver, and was enjoined against disposing of or interfering with it. The same order enjoined F. B. Parker, the assignee of T. J. Parker, from disposing of the assigned property for twenty days, to enable the receiver to bring an action to set aside the assignment.

The goods remained in the store of the debtor until April, 1855, when the defendant, as receiver, took possession of them. While he was making out an inventory, Gardner, the deputy sheriff, who held the plaintiff's execution, came to the store, when the conversation took place between them upon which the plaintiff relied to establish the promise upon which this action was based. The complaint claimed it to be an undertaking by the defendant to the deputy sheriff, that if the latter would relinquish his levy on the goods, he, the defendant, would pay the amount of the execution to him, for the plaintiff. According to the witness—Parker, the debtor—the deputy claimed that he had a lien on the goods by virtue of his levy, and so stated to the defendant, who answered that he would inquire, and if the levy was good he would pay the amount. According to the testimony of the deputy sheriff, the defendant said to him that he

would make inquiries, and if he became satisfied that the levy would hold in preference to his claim as receiver, he would pay the execution out of the moneys the goods should bring, and save his, the deputy's, selling them; or, he would act in accordance with the decision of the court. The testimony of the defendant, on his examination as a witness, was substantially to the same effect.

The defendant was the attorney of the present plaintiff in recovering his judgment against Parker; and, about the time of making the alleged agreement, he directed the deputy to hold on to the execution, which direction he repeated afterwards. No further steps were taken to enforce the levy. The defendant testified that it was his impression that the plaintiff, at the time, understood the arrangement which had been made between him and the deputy sheriff.

The defendant subsequently sold the goods as receiver, and received the proceeds of the sale, about $1,100.

F. B. Parker, the assignee, did not abandon his claim under the assignment, but asserted rights under it. The defendant, soon after his appointment, attempted to commence an action in his own name as receiver against the judgment debtor and the assignee, but failed to obtain an injunction; it being then considered that the action should be in the name of the judgment creditor. The plaintiffs in the two judgments, by the present defendant as their attorney, then commenced a suit against the Parkers to set aside the assignment. A judgment in that suit was obtained in April, 1855, by which the assignment was declared fraudulent and void, and the present defendant was appointed receiver, and directed to sell the goods and apply the proceeds to the satisfaction of the two judgments. The complaint in that action set up the supplementary proceedings before the county judge and the appointment of the plaintiff as receiver in these actions, and under these proceedings. The goods appear to have been sold under this judgment.

The referee, before whom the present case was tried, at the conclusion of the evidence, nonsuited the plaintiff, who

excepted. The judgment having been affirmed, at a General Term, the plaintiff appealed to this court.

*W. Woodbury*, for the appellant.

*C. C. Torrance*, defendant, in person.

DENIO, Ch. J. I am of the opinion that the plaintiff was entitled to recover, upon the proof before the referee, provided his title under the levy upon his execution was superior to that of the defendant as receiver in the actions of the other judgment creditors. The substance of the arrangement proved was, that if the deputy sheriff would not proceed to a sale under the plaintiff's execution, but would suffer the defendant to make sale of the goods as receiver, he would pay the plaintiff, or the deputy sheriff, for his use, the amount of the plaintiff's executions, if the plaintiff's levy was the prior lien. The deputy performed the conditions which formed the consideration of the defendant's promise, by virtually relinquishing the levy and allowing the defendant to sell the property. According to some of the witnesses, it was made a condition to the payment, that the defendant should be satisfied of the priority of the plaintiff's lien; but this could scarcely have been the understanding, according to the testimony of the defendant himself, who swore that he contemplated having the question of priority determined in some manner by the courts. It cannot be supposed that either the plaintiff or the deputy sheriff would have consented to permit the validity of the levy to depend wholly upon the judgment of the representative of the other creditors. One of the witnesses, Mr. Parker the judgment debtor, understood the arrangement to be that if the levy was good in law, as against the receiver, the defendant should pay the execution. I am well satisfied that this was the true character of the arrangement.

The promise was one which the plaintiff was entitled to the benefit of. Indeed, it may be considered as having been made to him, through the deputy as his agent. The plaintiff was informed of the agreement, and assented to the con-

ditions by suffering the levy to be relinquished in favor of
the title of the defendant as receiver.

The only question discussed in the opinion of the Supreme
Court is the relative priority of the title of the plaintiff
under the levy on his execution, and of the defendant under
his appointment as receiver; and this, in my opinion, is the
only disputable point in the case. The decision of the ref-
eree must have proceeded upon that view, as he nonsuited
the plaintiff instead of passing upon the terms of the agree-
ment, which it would have been his duty to do, if he had
not found what he considered a decisive answer to the action
in the supposed superiority of the defendant's title over that
of the plaintiff.

It is to be considered certain that the assignment to
F. B. Parker was fraudulent and void. It contained on its
face a provision which the courts hold to be incontrovertible
evidence of fraud; and it had, moreover, been determined to
be fraudulent and inoperative by a judgment which the
defendant himself gave in evidence, and which concluded
him upon that question. (*Chautauque County Bank* v. *Ris-
ley*, 19 N. Y., 369.) The assignee, however, did not con-
cede the invalidity of his title, but set up the instrument as
operative.

The property being personal chattels, and being the prop-
erty of the judgment debtor as respects his creditors, was lia-
ble to be seized and sold under the execution; but it having
been transferred by an instrument, valid as between the
parties to it, it was competent for a judgment creditor,
instead of causing it to be seized under the *fi. fa.*, to bring
the parties into court, with a view to procure a judgment
against the title of the assignee, and then to have the judg-
ment executed through the instrumentality of a receiver.
The proceedings supplementary to the execution may be
considered as the commencement of a process in equity, in
the nature of the former suit by creditor's bill. The county
judge had no right, it is true, to try the validity of the title
of the assignee. His order, however, would invest the
receiver with the rights of the creditor, and thus make him

the formal party to the subsequent proceedings. The plaintiff elected to pursue the direct legal remedy, by seizing the goods on his execution, while the other judgment creditors suffered their executions to be returned unsatisfied, preferring to resort to appropriate proceedings in the nature of a suit in equity, to procure a judgment against the claims of the assignee, and then to have his judgment executed according to the forms applicable to that proceeding. One of the judgment creditors commenced his process a few days prior to the plaintiff's levy, by obtaining an order for the examination of the debtor. The other instituted his proceeding a few days after the levy. As to the latter, there is no doubt as to the plaintiff's priority. Whatever judgment should have been given as to the creditor who first proceeded before the county judge, the plaintiffs' rights were superior to those of the other creditor, and there ought, at all events, to have been a recovery against the defendant for the balance of the proceeds of the sale of the goods, after the payment of the judgment upon which the supplementary proceedings were first taken, if those proceedings established a priority in favor of the other creditors. There was no well founded formal objection to this. The defendant undertook to pay the plaintiff's judgment if his levy gave him superior claims over the creditors whom he represented. If that levy was prior to one of them and not to the other, there was no difficulty in regulating the recovery according to the merits of the case.

But I am of opinion that the plaintiff by his levy established a priority over both the other judgment creditors. The subject out of which the debts were to be collected was tangible personal property, generally liable to seizure and sale under the ordinary legal process of *fieri facias*, and it was none the less liable because the debtor had undertaken to screen it from the pursuit of his creditors by a fraudulent transfer. The plaintiff caused it to be seized under that process. The other creditor whose case we are now considering, had, just prior to that seizure, commenced proceedings, looking towards a suit in the nature of a creditor's bill. Those

proceedings were only preliminary to a suit, for the officer could do nothing except to appoint a person who should represent the creditors by commencing and prosecuting such a suit. He could make no order subjecting property to a sale, where it was held adversely to the debtor. That proceeding was authorized by law, for the purpose of enabling a judgment and execution creditor to institute a suit to subject to the payment of his debt, property not vendible on execution, such as moneys due the judgment debtor, stocks, choses in action, or the like. As to these, the writ of *fieri facias* was inapplicable and powerless. As to such subjects, it was reasonable that the law, or the courts, should fix upon some stage of the creditor's process when the property which the debtor had in the subject should be affected with an equitable lien, so as to prevent a subsequent disposition of it to the prejudice of the creditor. One of the earliest judicial notices upon this point which I have met with in our courts was in (*Hadden* v. *Spader*, 20 Johns. 554, 571,) where Mr. Justice WOODWORTH, in the prevailing opinion of the court for the correction of errors, assimilated the case to that of a suit against a trustee for a breach of trust. There the filing the bill and service of the subpœna, would affect the trustee with notice, and prevent any further dealing with the subject to the prejudice of the plaintiff. One owing another, or having moneys or property of his in his hands, is in some sense his trustee. This appears to me to be the foundation of the doctrine which attributes to the commencement of a creditor's suit, something in the nature of a lien upon the debtor's choses in action. It was a necessary supplement to the principle that such subjects might be reached in chancery by the creditor. The object of the suit of *Hadden* v. *Spader*, was to subject moneys owing by Hadden to Davis, the judgment debtor, to the payment of the plaintiff's judgment. Hadden was made a defendant with the judgment debtor, when the case was before Chancellor KENT, from whose decree the appeal was taken to the court of errors; he called the debt which it was sought to subject *trust moneys*, belonging to the debtor in the hands of the defendant Had-

den, and he declared that all payments of the same by Hadden to Davis, subsequent to the filing of the bill containing notice of the creditor's right, and of his claim in pursuance of it, were made in his own wrong, thus putting it upon the ground of legal notice to the trustee not to deal further with the *cestui que trust*, and that the interest of such *cestui que trust* was claimed by his judgment creditor. The same doctrine is deducible from the case of (*Weed* v. *Pierce*, 9 Cow. 722, 728–9.) The complainant, a judgment creditor of the defendant Pierce, sought to subject money which the other defendants owed him, to the payment of their judgment. The point decided was that the issuing of execution· on the complainant's judgment did give a lien on the fund, but that it required the filing of a bill or some other decisive act, showing an intention to pursue the fund. The Judge (the late Chancellor WALWORTH, then circuit Judge,) considered that the giving notice of the claim by the plaintiff, and of his intention to pursue what he called the trust fund, would have the same effect to prevent the trustee disposing of it as a suit in equity. But such a notice certainly would not affect another judgment creditor who was pursuing a legal remedy. Something more than a notice, or a *lis pendens*, equivalent to actual notice, would be required to prejudice the levy of an execution. (*Edmeston* v. *Lyde*, 1 Paige, 637), reiterates the principle laid down in the last mentioned case. (*Corning* v. *White*, 2 Paige, 566), only decides that the judgment creditor who first files his bill in chancery obtains a priority in relation to the property and effects of the defendant, which cannot be reached by execution at law.

The defendant places a good deal of reliance on *Porter* v. *Williams* (5 Seld., 142), which affirmed a judgment in the Supreme Court reported in 5 How., 141. The debtor Williams, before the plaintiff's judgment was recovered, had assigned his property, real and personal, for the benefit of his creditors according to certain classes of preference, and had authorized the assignee to sell the goods on credit. After the plaintiff had obtained his judgment, Williams executed to his assignee an instrument directing him to sell

for cash only; but two days before the execution of that instrument the plaintiff had obtained an order for the examination of Williams in proceedings supplementary to execution. If that instrument was ineffectual to reform the assignment and to render it valid from the time the instrument was executed, that was nothing to preclude the plaintiff from prevailing in the action. If it had been held that the instrument had the effect to validate from the time of its execution the assignment which was unquestionably void, it would then become necessary to pass upon the effect of the order made in the supplementary proceedings; and the question would then be, whether that order so affected the debtor's title to his property that he could not subsequently assign it, so as to give the assignee a title superior to that of the plaintiff who, as a judgment creditor, had instituted the proceedings. All the judges who gave opinions in the two courts held that the instrument was wholly void and did not affect the title to the property in any way. The other principal question discussed in the case, whether the receiver, who was appointed sometime after the execution of the instrument, represented the creditors in such a sense as to entitle him to disaffirm the act of the debtor in executing the fraudulent assignment; and it was held that he did so represent them. Thus far it would seem that nothing was decided adverse to the pretensions of the plaintiff in the present case. But when the case was before the Supreme Court, Judge HARRIS, by whom the opinion was prepared, expressed an opinion that the order for the examination of the debtor, created a lien upon his property which he could not divest by the instrument executed to the assignee, even if it had been otherwise effectual; and there is an expression to the same effect in the opinion of Judge WILLARD when the case came here. After stating his opinion that by the original assignment the debtor had divested himself of all control over his property, and that he could neither revoke nor alter it, he adds: "and certainly not to the prejudice of a creditor whose lien on the property had attached by the institution of supplementary proceedings under the Code."

But I am confident that this court did not intend to pass upon the effect of the order for the examination of the debtor; for we were all perfectly confident that the instrument by which it was intended to correct and validate the assignment, was ineffectual. The case, as it was disposed of here, is more fully reported in 12 Howard's Practice Reports under the name of *Porter* v. *Clark and Williams.* An opinion is there printed which does not appear in Mr. Selden's reports, in which the judgment is placed wholly on the invalidity of the subsequent instrument, and on the power of a receiver, after he was appointed, without any suggestion that a retrospective effect could be given to the appointment so as to create a lien from the time the first order was made.

I am of opinion that, as regards chattels subject generally to seizure on execution, the making of an order for the examination of the debtor in proceedings supplementary to execution, has not any effect to preclude another judgment creditor from levying his execution on such chattels; and that such levy confers a right prior and superior to any acquired by the creditor obtaining that order. If the opinion expressed by Judge Harris should be considered correct, it would only show that the debtor could not *voluntarily* do any act to impair the rights acquired under the order, but it would be very far from establishing that other creditors, proceeding *in invitum* to enforce their legal remedies according to the ordinary course of justice, could be defeated by the granting of such an order. It is unnecessary to determine whether such an order has any effect to qualify the debtor's own voluntary disposition of his chattels, for the reason that no such question is now presented, and also because an amendment of the Code, passed in the year 1862, declares that the receiver shall, in such cases, be vested with the property and effects of the judgment debtor *from the time of filing and recording the order for his appointment.* This definite provision for changing the title of the debtor's property by a just intendment, puts an end to the principle

of relation by which an effect upon the property has been attributed to the preliminary order.

I am of opinion that the judgment in this case should be reversed, and a new trial ordered.

JOHNSON, J. The plaintiff's execution having been placed in the sheriff's hands, and actually levied upon the goods, before the appointment of the defendant as receiver in the proceedings supplementary to execution, the sheriff acquired thereby a right to such goods superior to that of the defendant, by virtue of his appointment. (*Van Alstyne* v. *Cook*, 25 N. Y., 489.) The right of the defendant, when he had perfected his appointment by the filing of his bond, only related back to the date of the order appointing him.

The issuing and service of the order requiring the judgment debtor to appear and be examined touching his property, created no lien or interest in the property discovered by such examination, in favor of the party who instituted and carried on the proceeding, as against other creditors who might in the meantime discover property liable to execution, and cause the same to be actually seized by such process. (*Voorhees* v. *Seymour*, 26 Barb., 569.)

The proceeding supplementary to execution, is a proceeding for the discovery and sequestration of the debtor's property, for the purpose of satisfying and discharging the judgment. But no right is acquired, as against other creditors pursuing different remedies, until the appointment of the receiver.

When the receiver is appointed and has filed his bond, he becomes vested with the title to the property, for the purpose of paying and discharging the debt. He then acquires a right analogous to that of a sheriff, who has taken property in execution; a right to sell and transfer the title for the purpose of raising money to pay off and satisfy the indebtedness. If his appointment as receiver is subsequent to a valid levy by a sheriff, at the instance of another creditor of the debtor, the receiver takes, subject to the right acquired by such levy. That was clearly the case here.

The promise was to pay the plaintiff's execution out of the proceeds of the sale of the property, provided the levy was valid and would hold as against the proceedings supplementary.

It did not depend upon the defendant's belief, or mental assent, as to the existence of the right created by the levy, but upon the existence in fact and in law of such right, which, as we have seen, is entirely clear. There can be no doubt that the consideration for this promise is abundantly sufficient. It was the relinquishment by the sheriff of a clear legal right, which gave to the defendant a complete and perfect title to the goods which he had not previously, and thus enable him to dispose of them, free and clear of such prior and superior claim. The promise is not affected in the least, by the statute of frauds. It is not a mere promise to pay the debt of a third person, but a promise to pay off and satisfy a valid lien and claim upon property, on condition that the party promising may take and sell the property discharged from such lien and claim. I do not perceive that the question of the validity of this promise is in any way affected by the circumstance that the creditors whom the defendant represented had proceeded by action, and caused the assignment to be set aside and declared void. That action did not affect the plaintiff's levy. He was not a party to the action, and might have proceeded to sell had he seen fit while it was pending. The promise was made, and the right under the levy relinquished, after the decree declaring the assignment fraudulent and void as to creditors had been obtained. No question was then raised by the defendant, as to whether the plaintiff had not lost his right by having slept too long upon it, or anything of that nature. The only question was whether any legal right could have been acquired by taking the property in execution, between the time of the issuing and service of the order for the examination of the judgment debtor, and the order for the appointment of the defendant as receiver. The promise was made to depend upon the existence of that right only, and it is too late now to raise the question of laches in not pro-

ceeding to sell under the execution. But there was in truth no laches which affected 'the plaintiff's rights under his execution. The goods were locked up safely in the store, and the sheriff insisted upon his right to sell, and control them, the moment the defendant undertook to exercise his rights as receiver. The sheriff was not prevented by the injunction in the order for the examination of the judgment debtor, from proceeding to sell the goods. That order did not enjoin him from proceeding as a public officer to execute his process. The defendant cannot insist that it had that effect, because that would be fatal to the argument that the plaintiff's rights had been affected by the laches. So far as appears, the delay was the mere voluntary act of the sheriff, which affected no one's rights injuriously.

The promise being a valid one, I do not see why this action for the money may not be maintained upon it. The defendant has sold the property and realized a sum of money for it much more than sufficient to pay and satisfy the plaintiff's judgment. It was this money which he promised to pay, when he should sell the property and obtain it. The promise was for the plaintiff's benefit exclusively, and although not made to him directly, is available to him upon the principle established in *Lawrence* v. *Fox* (20 N. Y., 268), and *Brown* v. *Beers* (24 id., 178). Having adopted it he may maintain his action upon it instead of proceeding against the sheriff.

I am of the opinion, therefore, that the action was properly brought, and the plaintiff entitled to recover. The judgment should consequently be reversed and a new trial granted, with costs to abide the event.

DAVIES and HOGEBOOM, JJ., were for affirmance. All the other judges being in favor of reversal,

Judgment reversed.