## Case No. 7,408.

### JOHNSON v. ROGERS et al.

[15 N. B. R. 1;[1] 5 Am. Law Rec. 536; 14 Alb. Law J. 427.]

District Court, N. D. New York. Oct., 1876.

WALLACE, District Judge. The bankrupts were partners, and executed a general assignment of all their property, joint and individual, for the benefit of creditors, without preference, on the 5th of March, 1873. At this time they were solvent, as is conceded by the bill and the answers of the several defendants, and the assignment was void as to their creditors, because executed with intent to delay creditors. The proofs show that actions had been brought against the assignors by some of their creditors, and thereupon the assignors called their creditors together and explained their financial situation, and after consultation, and with the advice and concurrence of many of the creditors, it was concluded that a general assignment without preferences should be made to three assignees; two of whom were to be selected by the creditors, and one by the assignors. The purpose of the parties to this arrangement seems to have been to save the assignors the costs and vexation of actions which would otherwise be prosecuted, and to enable them to save a larger surplus for themselves than would remain if creditors should sell their property on execution; the creditors thus consenting believing that their interests would be safe. Pursuant to this understanding, the assignment was executed and the assignees entered upon their trust. Subsequently, various creditors became dissatisfied, and actions were commenced, and judgments were recovered against the assignors in favor of several of the defendants in this action. The assignee in bankruptcy has brought this action to set aside the assignment, and to ascertain and determine what if any liens exist upon the property under the judgments of the several defendants, and the proceedings thereon taken. The defendants, the judgment creditors, insist that their several judgments are liens upon the real estate transferred by the general assignment. their position being that as the assignment was void as to creditors, it was void as to their judgments, and the complainant, the assignee in bankruptcy, takes the title to the real estate subject to their judgments. The complainant controverts the legal proposition thus advanced by the defendants. and insists even if it is sound that. by reason of the participation of the defendants in the execution of the assignment, they are precluded from assailing its validity, and stand as though it was valid.

---

[1] [Reprinted from 15 N. B. R. 1, by permission.]

The issue thus presented raises several interesting questions, as to which the position of some of the defendants differs from that of other defendants, by reason of circumstances which will hereafter appear. Certain controlling principles which apply to the controversy, as between the complainant and all the defendants, may properly be stated at the outset. The assignment being void as intended to hinder and delay creditors, was void as to all existing creditors of the assignors. This being so, any existing creditor had the right to commence an action against the assignors, and upon the recovery of judgment would acquire a lien upon the real estate in the hands of the assignees at the time of the docketing of the judgment, and would, by a levy under an execution upon any of the personal property then in the hands of the assignees, acquire a lien upon that to the same extent as though such property had never been transferred by the assignors. As to the real estate, such creditors could sell it on execution, and at the expiration of the time for redemption, would acquire absolute title, and could maintain ejectment. And if several judgments are recovered, the liens of each attach in the order of their priority; and though a creditors' bill be instituted upon a junior judgment, and the assignment be declared fraudulent and void as to that judgment, the creditor by the decree obtains no priority as against the earlier judgment; such decree only operates upon the title of the assignors, and transfers no greater interest than the assignors would have had if no assignment had been made. Chautauque Co. Bank v. Risley, 19 N. Y. 369. As against the personal property, the priority is determined by the order of the levies under execution. If, however, a creditor by reason of exceptional circumstances is precluded from assailing the assignment, as to him it is as valid as it is to the assignors, and to the assignees who have accepted it. If such a creditor cannot be heard to allege that the assignment is fraudulent, he acquires no lien upon the real estate in the hands of the assignee, because a conveyance valid as to him has divested the title of the assignors, and as to him there is nothing upon which the lien can fasten. And the result is the same as to the personal property upon which he levies. He would be defeated in an action brought for its conversion by the assignees if he sold it on his execution. And if he brought an action in the nature of a creditors' bill to reach the proceeds of the property transferred, it would be ineffectual and no equitable lien would result from it.

The assignee in bankruptcy, though he represents all the creditors of the bankrupts, acquires only the title of the bankrupts, except as he is also invested with the right of creditors to assail fraudulent transfers, and with title to property conveyed by the bankrupts contrary to the provisions of the bankrupt act [of 1867 (14 Stat. 517)]. With these exceptions his title is subject to all liens existing upon the the property, legal or equitable, at the time of the commencement of the proceedings in bankruptcy. If the assignment had been void, only because contrary to the provisions of the bankrupt act, and the assignee in bankruptcy had obtained a decree setting it aside upon this ground, the judgment of the several creditors would not have been liens upon the real estate; as against these judgments the assignment would have been effectual to transfer the title to the original assignees. If these creditors had no liens prior to the commencement of the proceedings in bankruptcy, they would acquire none thereafter, and the assignee in bankruptcy would take the property, as it was at the commencement of the proceedings, for distribution to all the creditors of the bankrupts, in conformity with the terms of the bankrupt act.

[A creditor does not acquire a lien by levying upon property which is not in fact or in law the property of his debtor. A lien is simply the legal right to seize and hold the property. The creditor gains nothing by seizing property which he cannot hold, and loses nothing by yielding it up. The efficacy and validity of his lien depends upon his right to reduce the property to his possession. After the assignment is set aside, the creditor acquires no new rights. It is set aside only as against the assignee in bankruptcy; for all other purposes it stands. The judgments and executions upon the property are not liens because they do not attach upon any property which is, in fact or in law, the property of the judgment debtors.] [2]

Applying these principles, so far as they are applicable to the rights of all the parties here, it remains to ascertain how far they are decisive upon the facts as they exist in respect of the several defendants. The defendants Babcock and Clark recovered three several judgments against the assignors, which they claim are liens upon the real estate in the hands of the original assignees, which is now part of the estate of the complainant. It appears, satisfactorily, that they were consulted by the assignors before the assignment was executed; were cognizant of financial condition of the assignors, and assented to the plan of making a general assignment; and after it was executed, discontinued actions which they were prosecuting against the assignors for the recovery of their debts, in conformity to an understanding between the assignors, other creditors, and themselves, that they would thus discontinue if the assignment should be made. Having concurred in the execution of the assignment, they cannot now be heard

---

[2] [From 14 Alb. Law J. 427.]

to allege that it was fraudulent, because of facts of which they were fully informed when they gave assent; they cannot impeach a transaction for fraud in which they participated as parties. Steel v. Brown, 1 Taunt. 381; Phillips v. Wooster, 36 N. Y. 412. Inasmuch as they could not assail the assignment, it is valid as to them; if they had sold the real estate transferred by it they could not have maintained ejectment, because the assignees would have prevailed upon proof of the facts; if they had sought to make their judgments liens by an action to set aside the assignment, they would have been defeated. They are to be treated here as though the assignment were good, and divested the assignors of all real estate upon which judgments could attach. The complainant takes title to the real estate unincumbered by any lien existing by virtue of the judgments of these defendants.

· The defendant Sawyer recovered a judgment for one thousand three hundred and thirty-five dollars against the assignors upon a demand against them assigned to him by Hooker, one of the original assignees, who accepted the trust under the general assignment, with knowledge of the facts which render the assignment fraudulent. The demand existed when the assignment was made; and after it was made, and Hooker accepted the trust, he transferred his demand to Sawyer. I am satisfied this transfer was colorable merely, and made in order that Sawyer could obtain judgment, and assail the assignment in the interest of Hooker, which the latter, as a party to the instrument, could not himself assail. Under these circumstances Sawyer is in no better position than Hooker would have occupied; as to Hooker, the assignment was valid. An assignee cannot attack the trust he assumed to execute and defend. The judgment cannot be used to assail the instrument or to protect Hooker from the consequences of his own acts. No lien can be predicated upon it in the interest of Hooker. The defendants Rogers and Strickland recovered a judgment against Asa D. Wright, upon a demand transferred to them by William D. Parsons after the assignment was made. At the time of the assignment they were creditors of the assignors, and assented, with the other creditors, to its execution, with information of the facts. By the purchase of Parsons' claim they acquired all his rights. The purchaser of an equity or of a chose in action is invested with all the rights of the vendor. A purchaser, for a valuable consideration, can prevail upon the title purchased, although he had notice, at the time of the purchase, of facts which, if known to the vendor, would defeat the title. Story, Eq. Jur. § 1503, A; Alexander v. Pendleton, 8 Cranch [12 U. S.] 462; Jackson v. Given, 8 Johns. 107; Bumpus v. Platner, 1 Johns. Ch. 219. It does not appear that Parsons assented to the assignment. It is claimed, however, that after it was made he purchased property of the assignees, and thereby recognized their title, and is therefore precluded from assailing the assignment. It is not shown that he was aware of any of the facts which rendered the assignment fraudulent.

· The mere fact that a creditor deals with the assignees of his debtor does not preclude him from maintaining an action to declare the assignment fraudulent; he does not thereby accept any benefit as a creditor under the assignment. It has been held that a creditor who has accepted a benefit under an assignment, or who has claimed such benefit, is thereby precluded from attacking the assignment afterwards. Where this has occurred, with knowledge on the part of the creditor of the fraud which vitiates the assignment, the doctrine rests on clear principle; but I cannot concur in the proposition that a creditor who believes the assignment honest, and acts on that assumption, estops himself from questioning it if he afterwards ascertains it was a fraud. Whether the theory is that the creditor assents to the assignment, or ratifies it by accepting a benefit under it, or that he thereby estops himself from assailing it, there is neither assent, ratification, nor estoppel if he acted in ignorance of the fraud, for each is vitiated by the fraud. Even where he has accepted a dividend under the assignment, he has a right to disaffirm the act, on the discovery of the fraud, by tendering back what he has received. Babcock v. Dill, 43 Barb. 577. Here Parsons received no benefit under the assignment. He merely purchased property of the assignees. If he had done this with knowledge of the fraudulent character of the assignment, he would be estopped from disputing the title he acquired in an action to recover the price, to the same extent as would any other purchaser; and this, I think, is the extent of the estoppel. His act was that of a purchaser, and not that of a creditor, and cannot affect his rights as a creditor. In conclusion, both from the character of the act, and from the absence of evidence that Parsons knew the assignment to be fraudulent, there is nothing in the transaction which precludes Rogers and Strickland from assailing the assignment upon the demand bought by them of Parsons.

The judgment is against Asa D. Wright alone. It does not appear that any of the property included in the assignment was his individually. But, conceding all the property transferred was partnership property, his creditors were entitled to sell his interest as a partner in the real estate on their judgment; their judgments are liens on the real estate as though he were a tenant in common, subject to the payment of the firm debts, and subject to the equities of his partners. It is probable, after the adjustment of the partnership accounts, there will

be no property from which the judgment can be satisfied; but that question does not arise, and is not to be disposed of here. As to the real estate conveyed, the judgment is adjudged to be a lien subject to the adjustment of the partnership accounts.

The defendants the Van Ambers own two judgments against Asa D. Wright. They did not participate in the assignment, but they have purchased property of the assignees. It is not shown that they had knowledge of the fraudulent character of the assignment. One of their judgments is in favor of Rogers and Strickland, by whom it was assigned to the Van Ambers. As to the latter judgment, these defendants acquire no better rights for its enforcement than Rogers and Strickland possessed; and as Rogers and Strickland assented to the assignment, and could not therefore assail it, these defendants cannot, and they have no liens under the judgment. As to the other judgment, they have a lien upon the real estate, subject to the adjustment of the accounts of the firm of which Asa D. Wright was a member. It only remains to ascertain whether or not, to the amount of this judgment, they have a lien upon the personal property attempted to be transferred by the assignment, or upon the proceeds of the sales of property by the original assignees. It appears in proof that the Van Ambers commenced an action, in the nature of a creditors' bill predicated on their judgments, to set aside the assignment and reach the assets in the hands of the assignees. The action was pending at the time the petition in bankruptcy was filed, but had not proceeded to trial or judgment. It is urged for these defendants that, by the filing of their creditors' bill, they acquired an equitable lien upon all the assets in the hands of the original assignees, which lien is not defeated by the proceedings in bankruptcy. If such a lien was acquired it is not defeated by the bankruptcy proceedings, but is to be recognized and enforced by this court; the more difficult inquiry is, as to the nature and extent of the lien.

Where such an action is brought to reach choses in action, or property not subject to sale upon execution, according to the weight of authority the lien is acquired by the mere commencement of the action (Ex parte General Assignee [Case No. 5,305]; Clarke v. Rist [Case No. 2,861]; 2 Denio, 570; 3 Paige, 365); though it is stated in Stewart v. Isidor [5 Abb. Pr. (U. S.) 68] that the rule applies only to strict creditors' bills where, upon filing the bill, an injunction is taken out and served with the subpoena to answer. In Becker v. Torrance, 31 N. Y. 631, the nature and origin of the lien is discussed, and assimilated to that acquired by the commencement of an action against a trustee to enforce a trust; and it is said that the commencement of the action is equivalent to notice to the trustee, and prevents any further dealing with the subject to the prejudice of the plaintiff. If this is the correct theory of the lien, inasmuch as nothing would be gained by obtaining an injunction except the right to punish for contempt, I am unable to see how the lien depends, to any extent, upon obtaining an injunction.

While I am inclined to sustain the lien as to property which cannot be reached on execution, I am of opinion it does not extend further. In Storm v. Waddell, 2 Sandf. Ch. 494, it was held that property which can be seized on execution against the debtor, may be seized and sold by any other creditor, at any time prior to the appointment of a receiver in the creditors' suit. And the same doctrine has been repeatedly held in this state, where proceedings supplementary to execution in the nature of a creditors' bill have been instituted; in which cases the rule is settled that, although upon the appointment of a receiver the lien relates back to the commencement of the proceedings (Edmonston v. McLoud, 16 N. Y. 543; Lynch v. Johnson, 48 N. Y. 27), a creditor who levies intermediate the commencement and the appointment of the receiver, obtains a lien which supplants that under the supplementary proceedings (Becker v. Torrance, 31 N. Y. 631). That there should be a distinction in the nature of the lien as regards leviable property, and as regards equitable assets and choses in action, seems implied from the nature of the action under which the lien arises; it is brought to reach assets which cannot be taken upon execution. Strong practical reasons favor the rule then indicated. The creditor who proceeds by bill to reach such property may obtain the appointment of a receiver at any time; and that diligence which the law always enjoins upon creditors, as well as a fair regard for the rights of other creditors, should prompt him to adopt this practice. Other creditors may not be cognizant that a creditors' action has been instituted, and may subject themselves to the hazard of delay and loss by being led to pursue their remedy by execution against leviable chattels.

Equity favors and rewards diligence, and discountenances delay. The creditor who neglects to pursue, as far as practicable, any remedy which he possesses, should be deferred to another whose rights may be injured by such delay. Again, the uncertain and somewhat speculative character of the lien, depending as it does upon the result of the suit, and liable to be defeated by a disposition of the subject-matter, should induce courts to lean against its extension to property which can be placed in the corporeal possession of an officer of the courts. If, as would seem upon reason and upon precedent to be the case, chattels which may be seized on execution are not affected by the lien, as against a creditor who takes them on his execution, they should not be as against an assignee in bankruptcy who represents all

the creditors of the debtor. The same considerations which require diligence in the prosecution of the creditors' action, as against an execution creditor, apply in favor of the assignee. This leads me to the conclusion that until a receiver is appointed in the creditors' action, the lien does not become so far fixed, definite, and notorious as to authorize it to be upheld, as against the chattels of the debtor, which are subject to levy and sale on execution, as against the assignee in bankruptcy. The Van Ambers are adjudged to have an equitable lien upon the interest of Asa D. Wright in the property, not the subject of levy, which came to the hands of the complainant, to the amount of their judgment, together with the costs which had accrued on their action in the state court.

The question of costs in this action is reserved until the coming in of the report of the master, to whom it is referred to ascertain the interest of Asa D. Wright in the assets in the hands of the complainant.