Browst, J.
The mortgage to the National Bank of Auburn, was subsequently assigned to Avery, was executed January 24, 1887. The mortgage to Avery was executed February 8,1887. As to the first mortgage the court found that it was not accompanied by an immediate delivery or followed by an actual or continued change of possession of the chattels mortgaged, and that it was executed upon an agreement with the bank that the mortgagor might remain in possession of the property covered by the mortgage, and sell the same at retail in substantially the same manner as before the execution of the mortgage and use the avails.
Similar findings as to the Avery mortgage were refused. The court found, as a conclusion of law, that the mortgage to Avery *340 was valid and that the mortgage to the bank was not fraudulent and void as-against the judgment of said Ross'-nor "the plaintiff in this action.
There wits 'ample evidence to support -the findings aforesaid, and the validity of the Avery mortgage cannot be questioned on this appeal
The finding quoted in referenced the mortgage to the' bank rendered it void as to the creditors of the mortgagor. Gardner v. McEwen, 19 N. Y., 123; Russell v. Winne, 37 id., 591; Southard v. Benner, 72 id., 424; Potts v. Hart, 99 id., 168; Brackett v. Harvey, 25 Hun, 502; Bainbridge v. Richmond, 17 id., 391. And the term creditors includes all persons who were such while the. chattels remained in possession of the mortgagor under that-‘agreement, and it was not essential to their rights that they- did not obtain judgment or a specific lien until after delivery -of the property to the mortgagee. Stimson v. Wrigley, 86 N. Y., 332; Dutcher v. Swartwood, 15 Hun, 31. The conclusion that this mortgage was not void as against the judgment of Ross or the plaintiff was based upon a finding that Ross, the judgment creditor, with full knowledge that the agreement in reference "to the possession of the mortgaged property had been entered into, assented to such arrangement
This finding is challenged by the appellant on the ground that there is no evidence tending to support it, and whether there is or not is the vital question-in the case. - We-are of the opinion that this finding cannot be sustained.
An assent by a creditor to an arrangement between the mortgagor and mortgagee which would preclude him from asserting his rights-as a creditor of the mortgagor against the mortgaged property, must be such as to create against him an equitable estoppel, or it must exist in agreement, and in such case must be supported by -a valid consideration.
It-could not be claimed in this case-that there was -an estoppel. The mortgage .was executed and delivered and the-illegal -agreement made before -Ross-or his agent knew of it, and there is "no evidence and no claim that Mr. Avery did .-any-act >to his own prejudice or adopted any line of conduct by reason of-anything said Or done by Ross or on his behalf. -Hor-was-there'any valid agreement Without stating in detail the evidence, it appears that Beck, when .he applied to Ross to -sell him goods, - informed him that Mr. Avery, who was president of -the bank, -was to loan him *$1,000-to-be used in "his business without-security. .Ross inquired of Avery by letter if that statement waS true, and Avery replied -that he had agreed to help him to the -extent of $1,000.
Ross -understood this as an affirmative answer -to bis question, and made the sale. Soon after the mortgage was -given Ross learned of it, and -sent his agent, Gordon,.to Auburn to -inquire about it He-called on Avery and asked him why "he took the mortgage after-it was-understood that the loan was "to -be without security. Avery told him that Beck had offered to give it, as he had used some of the iyoney -loaned -him in paying incumbrances on his -property, and that the bank would let him *341 go on as if no "mortgage had been made. Gordon replied that if Beck -would continue in - business and pay Boss a little now and then, he would be satisfied, and that Beck had' some of the goods which Boss had sold .him which, were out, of-season, and if he would return them he would have credit Avery said that any arrangement that Gordon made with Beck about payment orrreturn.of the goods would be satisfactory to him.
This conversation took place on February 3d, and on February 8th Beck gave Avery another mortgage, whereupon he ■ immediately took possession of the stock in the store, and proceeded to sell it out under both mortgages.
There is no evidence in the case that Gordon had any authority from Boss to make an agreement to waive or surrender his right to attack the mortgage as fraudulent, or that the fact of such an agreement ever-was‘communicated to him, or that he acquiesced therein if it was told to him, and.none-thathe ever knew, prior to the commencement of this suit, of the agreement ¡between the mortgagor and mortgagee which rendered the mortgage void.
I -think a creditor could not be deprived of his legal rights as a ■result of an agreement made with his agent without some evidence that he knew of the defect in the mortgage, and had authorized his agent to make an agreement in reference, thereto, or had acquiesced in it when made, and this case is barren of any evidence tending to show any of these facts. But it is not necessary to rest our decision on that ground.
Assuming Gordon to have had full authority to negotiate with Avery and make the arrangement testified to, -there .was no consideration for the agreement The only consideration claimed is in the implied promise of Avery to release from the lien of his mortgage the goods that Beck should return to Boss, and the payments that he would make to him presumably out of ithe proceeds of sales at the store. But no payments were ever made and no goods were returned, and the mere promise to.release in case Beck returned the goods did not constitute a consideration. It was conditioned solely on Beck’s action and could become operative and binding only in case the goods were returned .and payments made. :It would be a remarkable proposition that Boss could be held to his contract in consideration of .the return of goods never delivered to him and payments on account of his claim never made. The agreement, if it may be called such, was conditioned solely upon acts of Beck which were never .performed. Moreover, it does not; appear that Gordon expressed himself as satisfied that the bank .should .hold the mortgage, but .with the,statement of Avery that the‘bank would let. Beck go on with 'the business. Avery testified rthat .he told Gordon that-it was his desire .that he (Beck) should continue, and he-saw no reason why he should not; that-there was no disposition by the bank to injure him .or press him and ¡that he hoped he would ;go on and continue business and pay his ¡liabilities ; that it was for the interest .of all parties that he should;go on and finish .his work and make it valuable, and that Gordon said “-that would be satisfactory to ¡him.” If this was evidence of a contract .it ¡certainly meant rthat "Avery would *342 not enforce the mortgage, and assuming that Gordon knew that the agreement between the bank and' Beck rendered that instrument void as to creditors, he might very well have expressed his satisfaction with the situation. Both parties were thus left in their original situation with reference to each other. Neither had preference over the other and both relied upon the business to repay their debts, and this is all that, in my judgment, can fairly be inferred from the testimony. The judgment must, therefore, be reversed, unless the other points made by the respondent can be sustained.
It is claimed that the plaintiff, as receiver, cannot maintain this action.
A receiver appointed in supplementary proceedings under the code is vested with the legal title to all the personal property of the judgment debtor and has the further right to prosecute actions to set aside all transfers of property made by the debtor to defraud his creditors.
For the purpose of maintaining such actions he represents the creditors and possesses the same rights as the creditor, under whose judgment, he was appointed, would himself have had, Becker v. Torrance, 31 N. Y., 631; Bostwick v. Menck, 40 id., 383; Wright v. Nostrand, 94 id., 31, and his rights in this respect were not confined to the assigned property, but he could follow the fund or proceeds of the sale thereof into the .possession of any person not a bona fide owner or holder thereof.
If the creditor could have secured a levy by execution upon the mortgaged property before a sale thereof, the fraudulent mortgagee could not have held the property against the sheriff. Brewing Co. v. Hart, 48 Hun, 393; 16 N. Y. State Rep., 321; Sperry v. Baldwin, 46 Hun, 120; 11 N. Y. State Rep., 609; Stimson v. Wrigley, 86 N. Y., 332. The right to collect the debt out of the mortgaged -property could not be defeated by the mortgagee simply by selling the property.
The same right that existed against the property would exist in favor of the creditor against the proceeds of the sale in the possession of the mortgagee, and an action to reach such a fund would be maintainable either by the creditor or by a receiver appointed in supplementary proceedings under the judgment. To hold otherwise would be to decide that the beneficial provisions of the statute could be defeated by a fraudulent mortgagee or vendee, by merely selling the assigned property,' and as this could, in the great majority of cases, be done before a judgment could be obtained by the creditor and a levy made, the statute would be practically annulled. Dutcher v. Swartwood, 15 Hun, 31.
The general term, however, based its decision upon the ground that the debt to the bank having been a valid one, and having been paid out of the' mortgaged property before any lien was ■ obtained thereon, another.creditor could not compel the mortgagee to refund the money on the ground that as against creditors generally the mortgage given to secure the paid debt would have been adjudged void. . Two classes of cases are cited by that learned court to sustain this conclusion.
*343 First, those holding that an assignee acting under a void assignment will not be held accountable for such of the proceeds of the assigned property paid out by him to creditors in pursuance of the assignment before any other creditor has obtained a lien upon the assigned property.
Second, that the objection that a chattel mortgage is void is not available when, before any creditor had questioned its validity, the mortgagor delivered the chattels to the mortgagee and authorized an immediate sale thereof by him.
I am unable to see that the first class of cases has any application to the facts before us.
As to the second there is no doubt as to the right of a debtor to prefer any creditor and to pay his debt in full, either in money or property, to the exclusion of all others.
But to apply that principle to this case is to ignore completely the facts pleaded and found by the court. There was no claim that the property sold was turned over by Beck to Avery in payment of the debt. The complaint alleged that the property was sold by Avery under the mortgage, and this fact was not denied by the answer. The court also found that Avery by virtue of both mortgages took possession of the mortgaged property and as such mortgagee caused the same to be advertised at public sale and sold under said mortgages.
There is nowhere any suggestion in the evidence or findings that the mortgage was waived or abandoned, or that the debtor had voluntarily delivered the property to Avery with authority to sell it.
Everything that was done was pursuant to and under the mortgages. Avery could not and did not claim to have received the property or the proceeds of the sale in payment of his debt as the voluntary act of the debtor, but as mortgagee. He cannot, therefore, assert against the claim of other creditors the honesty of his own debt. The mortgage being void all proceedings under it were void, and although he may possess an honest claim, he cannot retain property obtained by him under a fraudulent mortgage against a pursuing creditor. The proceedings taken to collect the debt are unlawful Murtha v. Curley, 90 N. Y., 372; Billings v. Russell, 101 N. Y., 226-231; Wells v. Langbein, 20 Fed. Rep., 183. It is further claimed that the judgment in the case of Avery v. Mead was a bar to this action. That was an action brought by the defendant to recover possession of the mortgaged property from the sheriff, who had levied upon it under an attachment issued in favor of Boss and against Beck.
It appeared upon the trial that the judgment in that action, which was set out in the answer and which adjudged Mr. Avery tb be the owner and entitled to the possession of the mortgaged property, had been reversed and a new trial granted, but the court found as a fact that the action was still pending.
We may, therefore, treat the defense as a plea of a former action pending. To sustain such a plea it must appear from the pleadings in the first action that it was for the same cause as the second or involved necessarily the same question. It is not enough *344 that .the same property is in controversy in both actions. Dawley v. Brown, 79 N. Y., 390.
The complaint in Avery v. Mead alleged that on February 16th, 1887, the plaintiff was. lawfully possessed of property therein described, which was the mortgaged property, and that the defendant wrongfully -took said property from the- plaintiff: The defendant justified under an attachment issued in the suit- .of Boss v. Beds and alleged that the goods levied upon by him were the property of Beck and “ that any pretended transfer- of ' said goods to the plaintiff was in fraud of creditors- and void.”
We need not speculate what result might follow the trial! of that action. It is plain- that to succeed in his defense the sheriff ■would necessarily be- compelled to establish the invalidity of both of the mortgages held by Mr. Avery. But it was not essential to Avery’s success that he should establish the’ validity of both. The right to the-possession of the mortgaged property could have-been successfully asserted under the second’ mortgage and the-validity of the mortgage-to the bank'did not, therefore, necessarily come in issue. Avery might have recovered' possession of the mortgaged-, property in the action against the sheriff and not be able to sustain the: validity of the bank mortgage. In other words, the validity of. the bank mortgage, which is the-sole inquiry here, was not necessarily involved in the action against" the sheriff. Hence the pendency of that action- was not a defense-to this.
The judgment should be-reversed- and-u new trial granted,.with, costs to -abide the event"
All concur, except Follett, Ch. J., dissenting, and Bradley and Haight, JJ., not sitting.