(8 App. Div. 556)

## In re ZIMMER.

## In re CLOVER.

(Supreme Court, Appellate Division, Fourth Department. July 30, 1896.)

SUPPLEMENTARY PROCEEDINGS—TITLE OF RECEIVER—PRIORITY.

Code Civ. Proc. § 2469, which provides that the receiver's title to personal property extends back by relation in certain cases, but not so as to "affect the title of a purchaser in good faith without notice, and for a valuable consideration," applies to the transfer of past-due negotiable instruments.

Appeal from Lewis county court.

Petition by Charles H. Zimmer, receiver of the property of John P. Zimmer, a creditor of the firm of Miller & Allen, to compel John Clover, as assignee for benefit of creditors of said firm of Miller & Allen, to render an account of his proceedings as such assignee. From part of the decree settling the accounts of the assignee, and directing the distribution of the estate among the respective parties adjudged entitled thereto, the receiver appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Jay A. Pase, for appellant.
Walter Ballou, for respondent Charles A. Miller.
E. M. Bagg, for respondent Clover.

GREEN, J. The main question in controversy in this matter arises between a receiver of the property of John P. Zimmer, a judgment debtor, appointed in proceedings supplementary to execution, and the assignee or transferee of negotiable promissory notes transferred to the claimant, Charles A. Miller, when past due, and subsequently to the service of an injunction order upon said judgment debtor, and also upon his debtors, Stephen T. Miller and Charles M. Allen, the assignors of the assigned estate, but prior to the appointment of the receiver. Charles A. Miller, the transferee of the notes, claims that he is a creditor of the estate to the extent of the amount paid by him for the notes, and is entitled to priority over the receiver subsequently appointed. This is disputed by the receiver of said judgment debtor and transferror of said notes, upon the ground that an equitable lien attached to the notes upon the service of the order upon said debtor, in favor of the judgment creditor, and that the legal title of the receiver goes back by relation to that time, and is superior to an intervening assignment. The referee finds that Charles A. Miller purchased the notes, and took them in good faith, without notice of the supplementary proceedings then pending against the judgment debtor John P. Zimmer, and paid therefor a specified valuable consideration. The claimant, Miller, bases his contention upon the last clause of section 2469, Code Civ. Proc. The receiver insists that that clause can have no application to the transfer of negotiable paper past due; and that is the question we are called upon to determine. It must be assumed from the findings of the referee

that Charles A. Miller had no actual notice of those proceedings, nor any knowledge of such facts or circumstances equivalent to actual notice.

It has been repeatedly held that the commencement of a suit in chancery by a judgment creditor, to reach choses in action and equitable assets, creates a lien or charge thereon, and the subsequent assignee takes them subject to the creditor's lien thus acquired. Upon filing the bill, an injunction was taken out and served with the subpœna to answer, restraining the debtor from parting with any of his property or effects till the further order of the court. A receiver was a convenient and important, but not indispensable, part of the proceeding. The effects locked up, as it were, in the hands of the debtor by the injunction, might be decreed to be delivered to the complainant, or sold by a master, and applied in satisfaction of the debt and costs. No voluntary assignment of the debtor could impair the complainant's right, nor any intervening claims of the other creditors. If he made an assignment to one ignorant of the injunction, the assignee would take the claim or demand subject to the prior right of the judgment creditor. The lien acquired by the creditor was defeasible only by a discharge of the debt, or by a successful defense of the suit in some one of the very restricted modes open to the defendant. Storm v. Waddell, 2 Sandf. Ch. 494, 510–519; Hayden v. Bucklin, 9 Paige, 512; Stewart v. Isidor, 5 Abb. Prac. (N. S.) 68–70; Becker v. Torrance, 31 N. Y. 631, 636–640; Lynch v. Johnson, 48 N. Y. 27, 33, 46 Barb. 56; Holbrook v. Zinc Co., 57 N. Y. 616; Clark v. Brockway, 1 Abb. Dec. 351, 354. But a service of the subpœna upon the defendant, subsequent to the filing of the complainant's bill, was necessary to create a lis pendens as against a bona fide purchaser of the subject-matter of litigation, who had not actual knowledge of the suit. Hayden v. Bucklin, 9 Paige, 512. "As soon as the judgment creditor's suit was instituted, the plaintiffs in the suit obtained a lien on all the choses in action of Rutter. All the title he had was subject to it. When the receiver was appointed, he acquired the title to those choses in action which Rutter had when the action was commenced. In contemplation of law, the title vested in the court when the action was commenced, and passed, as from that date, to the receiver. The right of the complainant in a creditors' bill is sometimes called a 'lien,' but it gives an immediate right to have a transfer of the defendant's property made to a receiver. So that, as between the receiver and a subsequent assignee, the title to the property itself passes to the receiver, and from the judgment debtor. The judgment debtor may assign his title subject to the receiver's title, but he cannot thus pass the title to the thing assigned from the receiver, but only the right to any surplus that may remain after satisfying the claims represented by the receiver." Roberts v. Railroad Co., 25 Barb. 662. But, of course, the doctrine of lis pendens is not applicable to the case of a bona fide purchaser of commercial paper not due. Holbrook v. Zinc Co., 57 N. Y. 616, 631.

In regard to movable property liable to execution at law, although it is subject to the lien of the creditor, it may be seized on execu-

tion by any other creditor, until the order for a receiver is made, but not afterwards; such order being equivalent to an actual levy on the property. Storm v. Waddell, supra. The reason for this distinction between property not vendible on execution, such as moneys due the judgment debtor, stocks, choses in action, and the like, and property that is subject to seizure on execution, is stated in Becker v. Torrance, supra. In respect to proceedings supplementary to execution, it is said that they were intended as a simple substitute for the creditors' bill, as formerly used in chancery; that, "under sections 292 and 294 [Code Proc.], the service of the order takes the place of the commencement of the suit under the old system, and should give the judgment creditor the priority of a vigilant creditor, and a lien upon the equitable assets of his debtor. This lien was rendered effectual by the final order of the judge, directing the defendant to pay his debt to the plaintiff [Ryder] in the judgment against Acker; and payment, or a liability to pay, in pursuance of that order, is a defense to this action, the plaintiff not having shown himself a bona fide purchaser of the claim against the defendant for value." Earl, J., in Lynch v. Johnson, 48 N. Y. 27, 33, affirming 46 Barb. 56. If it is to be understood from this expression of the learned judge that, if the plaintiff had shown himself to be a bona fide purchaser, he would be entitled to priority over an equitable lien upon the claim existing at the time of the assignment, it is not consistent with, but rather opposed to, the established doctrine governing creditors' bills, and also contrary to the general rule that an assignee of a chose in action takes it subject to all equities existing between the assignor and other parties. In the report of the case in 46 Barb. 56, it appears that no injunction order had been issued, nor any order or notice served upon the judgment debtor, but merely an order served upon the third party for his examination. But the court of appeals held that the effect of the service of the order upon the third party was to create an equitable lien, without regard to the injunction order, or notice to or service upon the judgment debtor. If that be so, a bona fide assignee would take subject to such lien. In Becker v. Torrance, 31 N. Y. 631, it was held that, as regards chattels subject generally to seizure on execution, the service of an order for the examination of the debtor in proceedings supplementary to execution, accompanied by an injunction clause, has not any effect to preclude any other judgment creditor from levying his execution on such chattels, and that such levy confers a right prior and superior to any acquired by the creditor obtaining that order; that, where a judgment creditor is pursuing his legal remedy by execution, something more than a notice or a lis pendens is required to prejudice his levy; that a receiver appointed after the goods have been levied upon holds subject to such levy. Denio, C. J., remarks that it was unnecessary to determine whether such an order has any effect to qualify the debtor's own voluntary disposition of his chattels, for the reason that no such question was presented, and also because of an amendment of the Code, passed in 1862, which declares that the receiver shall in such cases be vested with the

property and effects of the judgment debtor from the time of filing and recording the order for his appointment. "This definite provision for changing the title of the debtor's property by a just intendment puts an end to the principle of relation by which an effect upon the property has been attributed to the preliminary order." Also, Davenport v. Kelly, 42 N. Y. 193.

The foregoing statement of the law upon the particular matter under consideration, as formulated before the Code of Civil Procedure, will suffice for our present purpose. We will now consider the effect of section 2469 of the Code. By that section it is provided that:

"Where the receiver's title to personal property has become vested, as prescribed in the last section, it also extends back, by relation, for the benefit of the judgment creditor in whose behalf the special proceeding was instituted, as follows: (1) Where an order, requiring the judgment debtor to attend and be examined, * * * has been served, before the appointment of the receiver, or the extension of receivership, the receiver's title extends back, so as to include the personal property of the judgment debtor, at the time of the service of the order. (2) Where an order or warrant has not been served as specified in the foregoing subdivision, but an order has been made, requiring a person to attend and be examined, concerning property belonging, or a debt due, to the judgment debtor, the receiver's title extends to the personal property, belonging to the judgment debtor, which was in the hands or under the control of the person or corporation thus required to attend, at the time of the service of the order, and to a debt then due to him from that person or corporation. * * * But this section does not affect the title of a purchaser in good faith, without notice, and for a valuable consideration; or the payment of a debt in good faith, and without notice."

The words "personal property" include money, chattels, things in action, and evidences of debt. Code, § 3343, subd. 7.

In McCorkle v. Herrman, 117 N. Y. 302, 22 N. E. 949, Andrews, J., observed that section 2469 is a new provision, not found in the former Code, "and appears to have been inserted to change the rule declared in Becker v. Torrance, supra, to the effect," etc.; and it was held that, by the commencement of the proceedings, a creditor acquires an equitable lien on a debt owing to his debtor, which, on the appointment of a receiver, becomes a legal title in him, as of the date of the commencement of such proceedings. It is obvious that the last clause of the section quoted effects an important modification of the rule that an assignee or purchaser of a thing in action takes subject to the equitable lien of the judgment creditor created by the commencement of a creditors' suit or the institution of supplementary proceedings. An exception is created in favor of a bona fide purchaser, without notice, and for a valuable consideration. The other provisions of the section work no alteration of the rule as it theretofore existed, in respect to the effect of the equitable lien acquired by the creditor upon the things in action and equitable assets, which are not subject to execution at law, but they are merely declaratory of the existing law. It is not disputed but that the bona fide assignee or purchaser of a thing in action or evidence of debt is now protected against the equitable lien or claim of the judgment creditor; but the counsel for the receiver attempts to draw a distinction between the assignment of a claim or a nonnegotiable instrument, and the transfer of a negotiable paper past due. His

contention is that the last clause of the section can have no applica-
tion to the latter; that the purchaser takes the paper at his own risk,
subject to all equities attaching thereto; that the fact that the paper
was overdue charges him with notice, and puts him upon inquiry as
to what, if any, defenses, liens, or equities existed; that the trans-
feree takes subject to all equities which third persons could enforce
against his transferror.    And the argument of counsel leads him to
the conclusion that the transferee of negotiable paper past due is
chargeable with notice of the proceedings against his assignor, and
that, therefore, such transferee cannot be a bona fide purchaser
without notice, within the meaning of this provision.    This conten-
tion is clearly untenable, for it is neither supported by any authority,
nor founded upon any legal or sensible reason.    There is no sub-
stantial distinction between the assignment of nonnegotiable paper
and commercial paper past due.   Why should 'the assignee in the
one case be protected against the equitable lien of the creditor, and
not in the other?    Are they not governed by the same principles,
and judged by the same rules?    The general rule is that the assignee
of a thing in action takes it subject to all the equities existing
against it in the hands of his assignor, and can acquire no greater
right or interest therein than belonged to his transferror.   In other
words, "a purchaser of a chose in action must always abide by the
case of the person from whom he buys."   Fairbanks v. Sargent, 104
N. Y. 115, 116, 9 N. E. 870.    At common law, it was nonassignable,
and the assignee took by virtue of an assignment thereof an equita-
ble interest only, which must be governed by equitable rules for its
protection and enforcement.    Id.    And, in a conflict of equitable
claims, the rule of law as well as in equity is, "Qui prior est tempore
potior est jure."   As between different assignees of a chose in
action, by express assignment from the same person, the one prior
in point of time will be protected, though he has given no notice to
either the subsequent assignee or the debtor.   Muir v. Schenck, 3
Hill, 228.    And the assignee is subject to the equities existing in
favor of third persons.    Owen v. Evans, 134 N. Y. 519, 31 N. E. 999.

The provisions of the Code make no distinction between nonnego-
tiable things in action and evidences of debt and commercial paper
overdue as regards the protection of a bona fide purchaser without
notice; and why should we draw such a distinction, when no sub-
stantial distinction exists?   More reason why the assignee of com-
mercial paper should be protected.    Prior to the Code provision, the
equitable lien attached to all things in action and evidence of debt,
without regard to the particular character of the instrument, wheth-
er negotiable in its inception or otherwise.    The doctrine applied
equally to both kinds of paper.    So this exception in favor of bona
fide purchasers must have application to all kinds of instruments or
evidences of debt, excepting, of course, commercial paper negoti-
ated before maturity to a bona fide purchaser, for a valuable con-
sideration.    The words "without notice" mean without actual notice
of the proceedings, or a knowledge of such circumstances as may be
deemed equivalent to such notice.   Wilson v. Marion, 147 N. Y. 589,
42 N. E. 190.

Several inquiries are suggested here in respect to actions in the nature of creditors' bills under the Code.   Is an equitable lien upon the things in action and evidences of debt created by the mere service of the summons and complaint, or is the service of an injunction order requisite to its creation?   See Stewart v. Isidor, 5 Abb. Prac. (N. S.) 68, 70; Clark v. Brockway, supra; Code, §§ 1871, 1876.   When the lien attaches, is it superior to the claim of a bona fide assignee, as formerly, or is such an assignee to be protected?   The Code makes no provision upon the matter.   If the old rule in respect to creditors' bills still prevails, we have this anomaly:   That, if the creditor institutes supplementary proceedings, no equitable lien attaches to the choses in action and equitable assets of the debtor, as against a bona fide purchaser, without notice, and for a valuable consideration, but otherwise if he proceeds by action.   But why should such a purchaser or assignee be protected in the one case, and not in the other? However, these are simply suggestions, and not matters presented here for judicial determination.

The conclusion of the court is that the claim of a bona fide assignee or purchaser, for value, and without notice of the proceedings supplementary to execution commenced against the assignor, is superior to the equitable lien of the judgment creditor, and to the title of the receiver appointed subsequent to the assignment or purchase. The referee allowed the purchaser (Charles A. Miller) the amount he paid for the notes, and no claim is made for a greater amount, but he acquiesces in the decision.

The referee finds that John P. Zimmer, the judgment debtor, transferred the notes to Charles A. Miller, at the request of the makers, Stephen T. Miller and Charles M. Allen, the assignors of the assigned estate, and that said Charles A. purchased the notes at the latter's request, and for their benefit; but he also finds that he paid his own individual money for the notes.   Counsel for the receiver contends that this is equivalent to a finding that Miller purchased the notes as agent for the makers, and consequently he was not a bona fide purchaser, without notice and for value.   The finding does not warrant that construction, nor was it contemplated by the referee.   In effect, the referee finds that Miller purchased for himself, and there is no finding of a purchase as agent.   That he purchased at the request and for the benefit of the makers of the note (one of whom was his brother) may be understood as meaning that he would return to them the excess over and above the amount that he paid for the notes that he might receive from the assignee of the estate; and it is only that amount he claims as against the receiver of John P. Zimmer.

The decree, so far as appealed from, is affirmed, with costs payable out of the fund.   All concur.