SEYMOUR, receiver, &c. *vs.* WILSON.

A receiver of the property and effects of a creditor has no authority to bring a suit to set aside, as fraudulent, a prior assignment of a bond and mortgage, made by the debtor, which was valid as between the parties; or to recover the property so assigned, as the property of the debtor.

The duty of a receiver is confined to property of which the debtor had possession, power or control, actually or constructively, in whole or in part.

The remedy, in case of a fraudulent conveyance of the property, is a suit by the creditor himself, against all the parties to the fraud.

THIS was an appeal by the defendants from a judgment entered upon the report of a referee.

Conrad Cramer, on the 15th of March, 1850, recovered a judgment in this court against Ansel C. Durkee, for $67,12, damages and costs, upon a debt contracted the 1st of April, 1849. The summons was served on the 22d day of February, 1850, in the afternoon. An execution was issued upon this judgment to the sheriff of Washington county, where Durkee resided, and was returned wholly unsatisfied. Cramer thereupon instituted proceedings against Durkee under title nine, chapter two of the code, and the plaintiff was appointed receiver of his effects. In the forenoon of the 22d of February, 1850, Durkee assigned to the defendants the three first installments of $200 each, and the interest thereon to grow due on a mortgage bearing date October 15th, 1849, made by his brother Calvin Durkee and his wife to him, upon a lot of 13 acres in the town of Fort Edward, and given to secure the payment of $1000 and interest. There was then a prior outstanding mortgage of $400, upon the undivided half of the premises, executed by Calvin Durkee. The whole premises, according to the testimony, were worth not less than $800 and not to exceed $1000. Calvin was insolvent at the time of this transfer, and had been so ever since. And, after assigning the installments upon his mortgage, owned no other property, and was considerably in debt. Calvin, at this time, owed the defendants $300, and Sheldons & Wood upwards of $300. The defendants agreed to appropriate the avails of the mortgage equally to the payment of their debt and the debt of Sheldons & Wood. The defendants had previously caused to be sold on a judgment given to secure their debt, the aforesaid lot of land. They purchased it on the 7th of February, 1850, and obtained the sheriff's certificate of sale. This certificate was assigned by them to Ansel, when he assigned to them the installments upon his mortgage. There was no other consideration for that assignment moving between Ansel and the defendants. There was no consideration but brotherly affection moving between Ansel and Calvin for the assignment of the mortgage. And there was no consideration whatever moving as between Ansel and Sheldons & Wood. Before this suit was commenced, the plaintiff applied to the defendants to be

Seymour *v.* Wilson.

allowed the amount of his debt out of the mortgage. They refused to allow it. In his complaint the plaintiff asked that the assignment of the installments on the mortgage be declared void as against him, and that the mortgage and bond be assigned to him, or that the defendants be directed to pay the amount of the judgment and the costs of the supplementary proceedings, with the costs of this suit. The answer denied all knowledge of the judgment, the supplementary proceedings, and of the appointment of the plaintiff as receiver; but admitted the assignment of the bond and mortgage, with the allegation that it was executed to the defendants for a valuable consideration, and by them received in good faith, and without any intent on their part, or as they believed, on the part of Durkee, to defraud his creditors, and without any knowledge on their part that he had any creditors, and denying certain averments of the complaint, as to the value of the mortgaged premises, &c. The reply denied the averments of the answer.

*H. R. Wing*, for the appellants.

*E. F. Bullard*, for the plaintiff.

*By the Court*, HAND, P. J. The object of the appointment of a common law receiver was to protect the fund in litigation; and he had no powers except such as were conferred upon him by the order appointing him, and the course and practice of the court. (*Verplanck* v. *Mer. Ins. Co.* 2 *Paige*, 452. *Edw. on Rec.* 4. *Chautauque Bank* v. *White*, 6 *Barb.* 589.) He could not bring or defend actions, without special leave of the court. (2 *Story's Eq. Jur.* § 833 *a; Merritt* v. *Lyon*, 16 *Wend.* 405; *Edw. on Rec.* 117. 3 *Dan. Pr.* 1991.) By the act of 1845 (*Laws of* 1845, *ch.* 112, *p.* 91) receivers may sue in their own names for any debt, claim or demand transferred to them, or to the possession and control of which they are entitled as receivers. By § 244 of the code of 1849, in force when this suit was commenced, the courts were authorized to appoint receivers, according to the practice then existing, except as otherwise

provided by the code. The receiver in this case was appointed on the 25th of April, 1850, in proceedings supplementary to an execution against A. C. Durkee in favor of Cramer. By § 298 of that code, a receiver in such cases could be appointed with like authority as if appointed according to § 244. By § 299, if a third person, alleged to have property of the debtor or to be indebted to him, claimed an interest in it adverse to him, or denied the debt, such interest or debt was recoverable only in an action by the receiver. The language of § 244 implies that the revision of this part of our practice is postponed. The object of the statute of 1845 was to enable receivers to sue in their own names. Formerly an ordinary receiver was compelled to sue at law, in the name of the party having the legal estate. (*Wilson* v. *Wilson*, 1 *Barb. Ch. R.* 594.) The act went further, and authorized a purchaser from them to sue in his own name. But no new discretion was given to the receiver, and he was left as much under the direction and control of the court as before. By the rule of this court in relation to the powers and duties of a receiver, in force when the plaintiff was appointed, and this suit commenced, he had power to sue for the debts, demands and rents belonging to the debtor, and was required, without unreasonable delay, to convert the personal estate and effects into money. (*Rule* 81 *of* 1849.) And the debtor was required to deliver over all the property in his possession, power or control. (*Cassilear* v. *Simons*, 8 *Paige*, 273. *Browning* v. *Bettis, Id.* 568.) But the receiver had no authority by that rule, or any statute, to bring a suit to set aside a prior assignment or conveyance by the debtor as fraudulent, which was valid as between the parties ; or to recover the property so assigned, as the property of the debtor, but not in his possession. The subject matter of such a controversy is not a debt or demand of the debtor ; nor his personal estate or effects ; nor does the grantee or assignee claim any interest adverse to the judgment debtor in any property of the latter. His duty still is confined to property of which the debtor had possession, power or control, actually or constructively, in whole or in part. The remedy, in case of a fraudulent conveyance of the prop-

erty, is a suit by the creditor directly against all parties to the fraud. (*Green* v. *Hicks*, 1 *Barb. Ch. R.* 309; *Dorr* v. *Noxon*, 5 *How. Pr. R.* 29.) An assignment is usual, though it seems not absolutely necessary. (*Mann* v. *Pentz*, 2 *Sandf. Ch. R.* 257. *Wilson* v. *Allen*, 6 *Barb.* 545.) But in both cases, the receiver takes no more than the debtor could convey. The case of an executor or administrator is different. (*Babcock* v. *Booth*, 2 *Hill*, 181.) That was put solely upon the ground that, as the statute had taken away the remedy against an executor *de son tort*, the creditors would be remediless unless the personal representatives had a right of action. And the reasoning of the court in that case, and in the case of *Osborne* v. *Moss*, (7 *John.* 161,) is against the plaintiff here. The creditors themselves have a perfect right and remedy directly against the fraudulent parties, if any, in this case. Courts of equity have always been careful not to burden the fund in the hands of a receiver with costs. And it is best that any litigation in relation to the property claimed by third persons should be between the parties directly interested, and not through the intervention of an officer of the court. I think the judgment must be reversed on this ground. I have not thought it necessary to examine the subject so fully on the merits, as I should have done, had I come to the conclusion the plaintiff could bring this action; but the case is not free from doubts. Creditors, as such, independent of the effect of any special contract, have no lien or charge upon the effects of the debtor. (*Ld. Eldon, in Kendall ex parte*, 17 *Ves.* 526. *Wiggins* v. *Armstrong*, 2 *John. Ch.* 141. 16 *Wend.* 548. And see *Durant* v. *Sup. of Albany County*, 26 *Wend.* 66.) By exhausting their remedy at law by judgment and execution, our statute authorized them, in equity, to reach his *choses* in action. (2 *R. S.* 173–4.) And the code permits this to be done through supplementary proceedings. (*Code of* 1849, § 247, *et seq. Id.* 1851 § 292, *et seq.*) The referee found no actual fraud on the part of the defendants; he found that the defendants had no knowledge or notice that the assignor was indebted to any one; and that the transfer was made before Cramer com-

menced his suit. But he considered the assignment fraudulent in law as to them. They agreed to transfer, and did immediately transfer their claim to the equity of redemption in the property; and agreed to apply the three first installments to become due, on the mortgage, in payment of the judgments. It was, in fact, an assignment by Ansel to secure his brother's debt. Had he become a mere surety for his brother, on a suit and proceedings against him thereon, he could have been compelled to give up this mortgage notwithstanding his indebtedness. The defendants had a right to get security for their debts; and if no one had any prior lien or charge on the property, or preference over them, legal or equitable, and they have acted in perfect good faith, I am not prepared to say this security is not valid in their hands. The suit and proceedings by Cramer had no retroactive effect like an act of bankruptcy in England. *Qui prior est in tempore, potior est in jure.* When there is any fraud—and the court should scrutinize such transactions with careful jealousy—the creditor would find no difficulty. But as the creditors of Ansel had no lien or preference, and the transaction was valid between the parties, they can attack a prior disposition of his property only upon that ground. However, it is not necessary now, to put the case upon this point.

The judgment was that the defendants should pay to the plaintiff his claim, or assign to him all their interest in the bond and mortgage, making no reservation, although they still had an interest therein to the amount of over $400, and to which, at all events, they were entitled, after the claim of the plaintiff had been satisfied. This was probably a clerical error in the draft; as the decree should have provided for their residuary interests, in case the plaintiffs had been entitled to recover.

The judgment must be reversed and a new trial ordered; costs to abide the event.

[CLINTON GENERAL TERM, July 4, 1853. *Hand, Cady* and *C. L. Allen,* Justices.]