## Case No. 4,965.

### FOSTER et al. v. AMES et al.

[1 Lowell. 313.[1] 2 N. B. R. 455 (Quarto, 147); 2 Am. Law T. Rep. Bankr. 65.]

Circuit Court, D. Massachusetts. March, 1869.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

B. F. Thomas and J. D. Ball, for defendants.

D. Foster and T. K. Lothrop, for plaintiffs.

LOWELL, District Judge. It is admitted that either the circuit or the district court may entertain a bill by an assignee to redeem property mortgaged by the bankrupt. It is said, however, that there is no equity of redemption in chattels, but that the title becomes absolute immediately upon a breach, unless some remedy is given by statute; that in this case there should have been a tender of the amount due, according to sections 4 and 5 of chapter 151 of the General Statutes of Massachusetts, which is the sole mode of preventing a forfeiture. I am of opinion that there is such an equity: 2 Story, Eq. Jur. § 1031; Patchin v. Pierce, 12 Wend. 61; Slade v. Rigg, 3 Hare, 35; Wayne v. Hanham, 15 Jur. 506; Whitfield v. Parfitt, Id. 852. Nor does it appear to me that the statute remedy is exclusive. If the tender is not made, the legal estate is not revested in the mortgagor, but he may still

come into equity, at least when a tender was impossible,. or when for any other reason, the remedy at law is inadequate, as in this case, in which the assignees show -a necessity for marshalling the securities, even if the mortgage is wholly valid. See Dunn v. Massey, 6 Adol. & E. 479. Upon the remedy which may be had in the state courts, I speak with diffidence, but there is direct authority in this court to the point that the want of a tender required by statute is no bar to equitable relief here. Gordon v. Hobart [Case No. 5,609]. By section 14 of the bankrupt act [of 1867 (14 Stat. 517)] the assignee has all the rights of redemption which the debtor had; and it has been thought that he has more, and may redeem before the debt is payable, as the law of England has been held to be under the words "whenever payable." But that point does not arise in this case.

Taking this merely as a bill to redeem, a court of equity wou'd hesitate to permit the mortgagee to sell the property immediately, since the delay will largely benefit the assignee, with no risk to the mortgagee, who in the mean time can diminish his debt by the application of other securities.

But the assignees contend that bankruptcy so far changes the remedies of the respective parties that they ought to have the right, which they deny to the other side, of selling the property under the direction of the court, holding the proceeds to answer the lien of the respondents; and that this is a case in which the court should give such a direction. Both the power and the expediency of its exercise are denied by the mortgagees.

Under the bankrupt law of 1841 [5 Stat. 440]. the district court had power upon the petition of the assignee and notice to the mortgagees, to order a sale by the assignee which should pass an unincumbered title to the bankrupt's land, and the several mortgagees, whether assenting or not, were bound by the sale, and remitted to their rights against the proceeds. Houston v. City Bank of New Orleans, 6 How. [47 U. S.] 486; Ex parte Christy, 3 How. [44 U. S.] 292; Norton's Assignee v. Boyd, Id. 426. In the circuit court for Ohio, a bill was maintained by an assignee against several mortgagees of distinct parcels of land, and against persons claiming title to bank stock, to ascertain which transfers were valid and which voidable, and to redeem the former and annul the latter, all which was done; and when the case came to the supreme court the objection of multifariousness, which had been overruled in the court below, does not seem to have been brought up. McLean v. Lafayette Bank [Cases Nos. 8,885–8,889]; Buckingham v. McLean, 13 How. [54 U. S.] 150. The sixth section of the act under which these decisions were made is nearly identical with the first section of the present law, excepting that the latter adds words which seem to have been adopted for the purpose of recognizing those decisions, namely, that the jurisdiction shall extend "to the collection of all the assets of the bankrupt, to the ascertainment and liquidation of the liens and other specific claims thereon, to the adjustment of the various priorities and conflicting interests of all parties, and to the marshalling and disposition of the various funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors." And the cases cited in argument accord with this construction. It is urged that it is only on the application of the mortgagee that the property can be sold, and such appears to have been the practice in Massachusetts and in England. But in the latter country, it is merely a matter of practice which the courts can change at any time; and in the former, the language of the statute is that when a creditor holds a mortgage the property shall, "if he requires it," be sold, &c. These words are not found in our statute, section 20, and though the variation is slight, it is not unimportant in view of the practice under the act of 1841, by which the assignee might apply for the order of sale. Besides, section 20 must be construed with section 1, which, as we have seen, gives the district court power to order the sale, and to require the incumbrancers to follow the proceeds only. Of course such a sale ought not to be ordered when the mortgagee's title is admitted to be valid. and the sale will injure him, as where there is no market value, or not value enough for his own security. In such a case he ought to have the right to foreclose. In this case there appears to be both a serious dispute of title, and reason to believe that the mortgagee's rights will not be injuriously affected by the sale.

It was strongly urged that whatever power might otherwise exist, the 25th section clearly indicates that an adverse claimant may sue out replevin at any time before the court has ordered a sale. Such appears to be the effect of the latter part of that section, but it may perhaps be neutralized by the earlier part which gives the power to the court to order the sale, not only of property in possession of the assignee, but of. all "which is claimed by him," and Mr. Justice Swayne has held, in the case cited in the argument. that the power does extend to property in the possession of an adverse claimant. Bill v. Beckwith [Case No. 1,406]. It may be observed in support of this view, that the Massachusetts statute, from which section 25 of our act is evidently taken, has not the words "or which is claimed by him," so that that law only authorizes the sale of property in the possession of the assignee; and then the proviso that the possession may be recovered by replevin at any time before the order of sale, is harmonious with the remainder of the section, and perfectly intel-

ligible, and these additional words may have been inserted in the bankrupt law for the very purpose of effecting a change. I do not decide this point, and have considerable doubt upon it. But I am clear that under the full powers given by section 1, I can order the sale of mortgaged property which is in the possession of the assignee, whether there is any dispute of title or not, and that section 25 does not take away this power, and that when the assignee has applied for such an order it is too late for the mortgagee to avoid it by replevin. What I doubt is, whether when the case is not one concerning liens and incumbrances upon property in the assignee's possession, but a mere adverse title asserted by a third person, the assignee can force a sale against the will of the adverse claimant.

Another important question which was very strenuously debated, was, whether the court can authorize the assignee to finish the locomotives at the expense of the estate. There is no express provision of the statute touching this point, but, upon careful reflection, I am satisfied that where a great advantage will result to the estate, and within a reasonable time, the assignee may be permitted to expend money in this way. I do not refer to trading; I cannot see that buying and selling as a trader can come within the scope of the assignee's duty, but his office being to sell and collect the assets, he may, by order of court, put the assets into a merchantable form, as by cutting timber, harvesting crops, and the like, and so of finishing unfinished goods, though not, perhaps, working up mere raw materials, unless under very peculiar circumstances. I yield to the argument that the necessary delay must not be at the risk of the mortgagee, and due order can be taken for his protection, by a deposit of money, or in some other way, if necessary.

Temporary injunction ordered in the suit in the circuit court. Reference of the petition in the district court to ascertain what part of the goods can be sold at once; what part, if any, can be advantageously finished, and within what time, and at what expense; what part of the goods is covered by the mortgage, and the consideration and validity of the mortgage. Leave given to all parties to apply to the court from time to time as they may be advised; and to the mortgagee to apply to have the proceeds of sales of goods embraced in his mortgage, paid over to him from time to time, on proper terms.