## OLNEY, Receiver, etc., *v.* TANNER and others.

*(District Court, S. D. New York.   January 11, 1882.)*

1. **JURISDICTION OF FEDERAL COURTS OVER BANKRUPT'S PROPERTY FRAUDULENTLY ASSIGNED.**

    The district and circuit courts have jurisdiction of a plenary suit brought by any person against the assignee in bankruptcy to assert a claim of superior title to property of the bankrupt fraudulently assigned before proceedings in bankruptcy.  This jurisdiction is not affected by the fact that other parties than the assignee in bankruptcy are necessary parties to the suit.

2. **RECEIVER OF STATE COURT—TITLE TO PROPERTY ASSIGNED BY DEBTOR IN FRAUD OF CREDITORS—EFFECT OF PROCEEDINGS IN BANKRUPTCY.**

    The receiver of a judgment debtor appointed in supplementary proceedings in the state court, under the New York Code of Procedure, does not acquire *ipso facto*, by virtue of such appointment, a title to property previously assigned by the debtor in fraud of creditors, nor any lien thereon, until suit to set it aside, or other legal proceedings or notice of his claim to treat the assignment as void; and if no such suit or proceedings are brought or taken by such a receiver until after the commencement of proceedings in bankruptcy, the receiver has no title in the property superior to the assignee; nor can he thereafter, under the rule established by the supreme court, (*Glenny* v. *Langdon*, 98 U. S. 20,) maintain an action to vacate the fraudulent assignment.

3. **SAME—HOW VESTED WITH TITLE TO DEBTOR'S PROPERTY.**

    Such a receiver represents his judgment creditor only, and, like a receiver in a judgment creditor's bill, does not become vested with the title to such property except through an action to which the fraudulent assignee is a party.

4. **SAME — RECOGNITION IN FOREIGN OR INDEPENDENT TRIBUNALS BY COMITY ONLY—NOT ENTITLED TO OBTAIN PREFERENCE OVER OTHER CREDITORS.**

    A receiver, as an officer of the court that appoints him, is recognized in foreign or independent tribunals by comity only.  *Semble* that this comity is not to be extended so as to confer preferences in favor of particular creditors to the detriment of the general creditors whose interests foreign or independent tribunals are charged with protecting, and that such a receiver is not entitled to the aid of a federal court, sitting in bankruptcy, in obtaining a preference over other creditors entitled to its protection.

5. **ASSIGNMENT FOR BENEFIT OF CREDITORS — PROOF OF FRAUDULENT INTENT REQUISITE TO SET IT ASIDE — NOT INVALIDATED BY DELINQUENCIES OF ASSIGNEE.**

    An assignment for the equal benefit of all creditors should not be set aside in favor of one creditor as fraudulent except upon clear and convincing proofs of fraudulent intent.  If complete and perfect in itself, and not fraudulent in its inception, it is not invalidated by the subsequent remissness or inefficiency or errors of judgment of the assignee.

6. **SAME—SUBSEQUENT ACTS OF DEBTOR WHEN NOT EVIDENCE OF FRAUDULENT INTENT.**

    The subsequent employment of the assignor or the continuance of the business for working up the old stock, or the fulfilment of outstanding contracts, and the purchase of necessary goods therefor, *held*, in this case, not sufficient evidence of an original fraudulent intent.

In Equity.

*Norwood & Coggeshall*, for complainant.

*Charles Jones*, for defendants.

BROWN, D. J. This is an action brought to set aside as fraudulent and void a voluntary assignment made by Nicholas Swartwout to the defendant Tanner, on March 28, 1877, in trust for the equal benefit of his creditors.

On March 27th, the day preceding the assignment, Valentine H. Seaman recovered a judgment against Swartwout, in the supreme court of this state, for the sum of $4,107.84, upon which execution was duly returned unsatisfied. Thereafter, upon proceedings supplementary to execution, in accordance with the state practice, the plaintiff was appointed receiver of the judgment debtor on August 15, 1877, and on August 22d a copy of the order was served, filed, and recorded, as required by the state law, so as to invest the plaintiff with whatever rights legally accrued to him as a receiver of the judgment debtor so appointed. The plaintiff claims that he thereby became vested with the legal title to the property conveyed to Tanner some four months before.

On September 11, 1877, involuntary proceedings in bankruptcy were commenced in this court against Swartwout, upon which he was adjudicated a bankrupt on October 1, 1877. In January, 1878, the defendant Sage was appointed assignee, and an assignment of the bankrupt's property was duly executed to him.

Thereafter on the ninth day of May, 1878, this bill was filed by the receiver, as complainant, against Swartwout, the judgment debtor. Tanner, his voluntary assignee, and Sage, the assignee in bankruptcy. The bill alleges that the assignment was fraudulent and void because made with an actual intent to defraud creditors; and also that the "assignment was absolutely void" under the state law because no schedules of property and debts were filed until July 30, 1877, and not within 30 days after the execution of the assignment as required by the state law; that the plaintiff, by virtue of his appointment as receiver, "became entitled to the possession and collection of all the assigned property;" and on the above grounds the complainant asks that the assignment be declared fraudulent and void as against the plaintiff, and that Swartwout and Tanner be compelled to account to the plaintiff for all the assigned property or its proceeds, and that the plaintiff be appointed receiver in this suit of all the said property, with the usual injunction.

Sage, the assignee in bankruptcy, was served with a subpœna, but

did not appear or answer. The other defendants have answered, denying the jurisdiction of the court, the right of the complainant to institute or to maintain in this court such a suit as this, and also denying the alleged fraudulent intent, or the legal invalidity of the assignment.

The cause is submitted on the pleadings and proofs.

By section 4979 of the Revised Statutes this court has jurisdiction of any action "brought against an assignee in bankruptcy by any person claiming an adverse interest touching any property or rights of the bankrupt transferable to or vested in the assignee."

If the property assigned by Swartwout to Tanner in March, 1877, was conveyed to him in fraud of creditors, as alleged in the bill, then, by the terms of section 5046, such property or its proceeds became "vested in the assignee in bankruptcy" when he was subsequently appointed, unless the appointment of the complainant as receiver of Swartwout in the state court, prior to the commencement of the proceedings in bankruptcy, had already vested the title thereto in the receiver.

The proofs show that all the property, except such as was foreclosed under outstanding mortgages, has been sold by the voluntary assignee, and that less has been realized than the amount of the receiver's judgment. If the plaintiff's claim is sustained, and he is appointed receiver of said property in this suit for the benefit of his judgment creditor, the result will be that the whole property of the bankrupt will be applied upon the judgment of a single creditor, to the exclusion of the assignee in bankruptcy and of all other creditors. In so far, therefore, as the case involves a claim of priority in the application of the assigned property or its proceeds to the judgment of Seaman exclusively, it is the case of a person claiming an interest in the property of the bankrupt adverse to the interests of the assignee in bankruptcy, within section 4979. The assignee in bankruptcy was a necessary party to the suit in order to make a valid sale of the real estate referred to in the bill, as well as to be bound by the distribution of the proceeds; and as the plaintiff's claim of title to the property is adverse to the interests of the assignee, and of all other creditors, the case seems to me to be within the very language of section 4979. That section does not confine jurisdiction to cases in which there is nothing else involved except an "adverse claim;" it embraces "all suits in law or in equity" between the assignee and persons claiming an adverse interest. Questions like those here presented can only be determined by plenary suit, (*Smith* v. *Mason*, 14 Wall. 419;

*In re Keroscne Oil Co.* 6 Blatchf. 521;) and if the "suit" involves as an essential part of it the determination of such an adverse claim, then the whole "suit" is properly brought in the district or the circuit court, although other questions be involved, and other parties be necessarily present to be bound by the decree. *Burbank* v. *Bigelow,* 14 N. B. R. 445, 447; *Lathrop* v. *Drake,* 13 N. B. R. 472; *In re Casey,* 10 Blatchf. 376, 382; *Marshall* v. *Knox,* 16 Wall. 551; *Bachman* v. *Packard,* 7 N. B. R. 353; *Morgan* v. *Thornhill,* 11 Wall. 65; *In re The Iron Mountain Co.* 9. Blatchf. 320; *Foster* v. *Ames,* 2 N. B. R. 455; *Markson* v *Haney,* 12 N. B. R. 484; *Glenny* v. *Langdon,* 98 U. S. 24.

2. Upon the authority of the case of *Booth* v. *Clarke,* 17 How. 322, I think there is much doubt whether the complainant as a receiver, an officer of a state court, has any such standing in a court of the United States sitting in bankruptcy as entitles him to its aid in a case like this, seeking a preference in contravention of the intent and policy of the bankrupt act. Outside of the jurisdiction which appoints him, a receiver is not ordinarily entitled to maintain suits except by comity; and this comity does not extend to aiding preferences sought to be acquired by statutory assignments or other proceedings *in invitum,* to the detriment of other creditors whose interests are in the keeping of foreign or independent tribunals. *Booth* v. *Clarke,* 17 How. 322; *Brigham* v. *Luddington,* 12 Blatchf. 237, 242; *Chandler* v. *Siddle,* 10 N. B. R. 236; *Willitts* v. *Waite,* 25 N. Y. 577, 587; *Hoyt* v. *Thompson,* 5 N. Y. 320; *Runk* v. *St. John,* 29 Barb. 585; High, Receivers, § 156; *Betton* v. *Valentine,* 1 Curt. 168; *Hope Mutual, etc.,* v. *Taylor,* 2 Robt. 278, 284.

In *Booth* v. *Clark* this question was elaborately considered in the supreme court of the United States. The case there was analogous to the present, except that the suit by the New York receiver was there brought in the District of Columbia, and also except that in that case no fraudulent assignment intervened requiring, as in this case, a further judgment of the court in aid of the receiver's title. In a lengthy opinion, *Swayne, J.,* says:

"We think that a receiver has never been recognized by a foreign tribunal as an actor in a suit. He is not within that comity which nations have permitted, etc. * * * A receiver is appointed under a creditor's bill for one or more creditors, as the case may be, for their benefits, to the exclusion of all other creditors of the debtor, if there be any such as there are in this case. Whether appointed, as this receiver was, under the statute of New York, or under the rules and practice of chancery, as they may be, his official relations to the court are the same. * * * He has no extra-

territorial power of official action; none which the court appointing him can confer with authority to go into a foreign jurisdiction to take posession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court *or another jurisdiction,* as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek. * * * If he seeks to be recognized *in another jurisdiction,* it is to take the fund there out of it without such court having any control of his subsequent action in respect to it, and without his having even official power to give security to the court, the aid of which he seeks for his faithful conduct and official accountability." Pages 335–339.

Towards the close of the opinion it is intimated that if the receiver's title had rested, not merely upon the law or practice of the local courts in the collection of debts, but upon an actual assignment of the claim by the debtor himself, prior to the bankruptcy, by some instrument universally recognized as passing a title to property, the decision might then have been different. *Graydon* v. *Church,* 7 Mich. 36. This distinction would not benefit the complainant in this case, as no such assignment has ever been made to him. The plaintiff here has no right or title of his own; he is a mere officer of another court, seeking, through a judgment to be obtained in this, an independent tribunal, to enforce and make available certain proceedings *in invitum* against the judgment debtor in another jurisdiction, for the exclusive benefit of a single creditor. For many purposes the courts of the states and those of the United States are treated as foreign to each other, although sitting within the same territorial limits. *Walsh* v. *Durkin,* 12 Johns. 99; *Baldwin* v. *Hale,* 17 Johns. 272; *Tarbell* v. *Griggs,* 3 Paige, 209; *White* v. *Whiteman,* 1 Curt. 494; *Stanton* v. *Embury,* 93 U. S. 548, 554; *Latham* v. *Chafee,* 7 Fed. Rep. 520. In *Pennoyer* v. *Neff,* 95 U. S. 714, 732, the court say: "While they are not foreign tribunals in their relations to the state courts, they are tribunals of different sovereignty exercising a distinct and independent jurisdiction."

The United States district court of this district, sitting in bankruptcy, is charged with the protection of the interests of creditors of the bankrupt throughout the whole country. Its discharge of the bankrupt here is operative in all the states; and, as the interests which the court is charged with protecting are not local, but national, there would seem to be no good reason why a United States court in bankruptcy, sitting in this state, should be bound to aid an officer of a state court in securing a preference over other creditors, any more than if the bankruptcy proceedings happened to be in a similar court

charged with the same duties and in favor of the same creditors, sitting in a state adjoining, or in the District of Columbia. If the assets sought by the bill are within the control of this court, an independent jurisdiction, then the same reasons exist for refusing to aid the complainant in appropriating them to the exclusion of the whole body of creditors who are entitled to the protection of the court in bankruptcy, wherever sitting, as much as if the assets were in the District of Columbia. The case might be different if the complainant had ever become so vested with the absolute title to the property as to need no further adjudication to determine his rights or to make them available. Instead of that being the case, it is only in and through a further judgment of some competent court that it can be ascertained whether he has any right or title whatsoever.

On the other hand, section 4979 and other sections of the bankrupt law indicate a policy to permit, if not to require, all adverse claims upon the bankrupt estate to be adjudicated in the courts of bankruptcy. If, therefore, the receiver had, prior to the bankruptcy, a complete legal title to the property transferred to Tanner, or even a complete and perfect legal lien upon it, recognizable by general law, then it would seem that the court in bankruptcy is the proper forum in which to assert his title or lien, and that it ought to be there fully recognized and enforced; while, if his title or his lien is imperfect or inchoate only, he cannot be entitled to any aid from this court or any other court to perfect it, against the interests of other creditors, after the commencement of proceedings in bankruptcy, and the vesting of the property in the bankrupt's assignee under section 5046.

The essential point in the decision of *Booth* v. *Clarke* is that a receiver's title to property not reduced to possession and not supported by any assignment from the debtor, is not such a title as will prevail in independent tribunals against the interests of other creditors entitled to its equal protection; and if this doctrine is applied as regards the undisputed property of the debtor, it would seem to be still more applicable to cases where a fraudulent assignment stands in the receiver's way, and the preliminary judgment of this court is required in aid of his alleged title.

3. Aside, however, from the question of the receiver's standing in this court in such a suit as this, it is clear that he cannot maintain this action except upon the basis of his holding the legal title to the assigned property by virtue of the order of the state court appointing him receiver prior to the commencement of the proceed-

ings in bankruptcy. Unless at that time he already held the title, it became by section 5046 "vested" in the assignee in bankruptcy, and no subsequent suit would avail him; nor, unless he had some title paramount to that of such assignee, could he maintain any action to set aside the voluntary assignment after the appointment of the assignee in bankruptcy, as the supreme court has held that right to be vested exclusively in the latter. *Glenny* v. *Langdon*, 98 U. S. 20, 27; *Trimble* v. *Woodhead*, 102 U. S. 647; *Moyer* v. *Dewey*, 103 U. S. 301.

The plaintiff claims that the order appointing him receiver invested him *instanter* with the title to this property, on two grounds: *First*, because the voluntary assignment had become under the state law absolutely "void" for want of schedules being filed as required; *second*, because it was made with an actual intent to defraud creditors.

When this case was previously before the court upon demurrer to the bill of complaint (19 N. B. R. 178) it was assumed that the assignment was absolutely void under the state law, according to the allegations of the bill, which the demurrer admitted; and, the title being therefore legally in the debtor, that the appointment of the plaintiff as receiver transferred the debtor's title to the receiver as in ordinary cases, (*Porter* v. *Williams*, 5 Seld. 142,) and consequently that his title was antecedent and paramount to that of the assignee; and the demurrer was therefore overruled.

It now appears that the assignment was executed and delivered on March 28, 1877, and that, by the state law then in force, a failure to file schedules as directed by the statute did not invalidate the assignment. *Brennan* v. *Willson*, 71 N. Y. 502; *In re Croughwell*, 17 N. B. R. 337; *Thrasher* v. *Bentley*, 59 N. Y. 649; *Hardmann* v. *Bowen*, 39 N. Y. 196, 199. The act of 1877, making assignments "void" if schedules were not filed within 30 days after the assignment was executed, was not passed until June 16th, nearly three months after this assignment was made. Section 28 of the latter act (Laws 1877, chapter 466) repeals prior acts, but declares that this repeal "shall not affect any proceedings had; and any proceedings pending under the act hereby referred to may be continued under this act." But as 30 days after the assignment of March 28th had already expired long before June 16th, when this act was passed, the new act could not possibly be applied in that particular to the assignment in question. The act declares that the repeal of former acts shall "not affect any proceedings had." One of the "proceedings already had" in this case was the vesting of the title to this property in the assignee without liability

to be defeated through any mere delay in filing schedules. This title must therefore necessarily stand, under this language of the act, unless something else in it plainly defeats the title. The subsequent provision, that "proceedings pending *may* be continued under this act," is, it seems to me, wholly insufficient to defeat it. The language is permissive, and does not indicate any purpose of defeating any former assignments for such a cause. The act contains no regulation or direction in regard to pending assignments in which more than 30 days have already elapsed without schedules being filed; and the validity of such assignments must therefore be judged according to the prior acts, and under these the assignment, as we have seen, was not void.

The title to this property being therefore in the voluntary assignee at the time the receiver was appointed, through a deed valid as between the parties to it, the question remains whether, assuming that the assignment was fraudulent as to creditors, the receiver, upon his appointment, acquired *ipso facto* the title to the assigned property, or only a right of action, as representative of the judgment creditor, to procure it to be adjudged invalid in a suit instituted for that purpose. If the latter is all that the receiver acquired by his appointment, then, as he failed to institute any such suit till long after the commencement of proceedings in bankruptcy, the property had, by virtue of section 5046 and section 5044, already vested in the assignee in bankurptcy prior to the filing of this bill. *Miller* v. *O'Brien*, 9 Blatchf. 270; *In re Wynne*, 4 N. B. R. 25. The complainant was appointed receiver in proceedings supplementary to execution under the Code of Procedure as it existed prior to the amendment of 1880. These proceedings were adopted as a substitute for the former creditor's bill, to reach assets of a judgment debtor after execution returned unsatisfied, and the practice under the Code is in most respects substantially the same as formerly existed, except in matters of form. The Code authorized a receiver to be appointed "of the property of the judgment debtor," (old Code, § 298; new, § 2464,) just as a receiver was formerly appointed in the simplest form of a creditors' bill brought against the judgment debtor alone. The Code did not define the powers or duties of such a receiver, but adopted them as they existed in the former practice. By that practice such a receiver became vested, by the order appointing him, with all the property and effects of the debtor which he had in his possession or under his control; but not with property to which the debtor had himself no title, but which he had conveyed to another in fraud of creditors. To have

the receivership reach such property it was necessary that the creditors' bill should be of broader scope, including the fraudulent grantee as a party defendant, and assailing the fraudulent transfer itself. The receiver appointed in such an action became a receiver of the property described in the bill, and vested with the title as against all the parties to the cause. *Browning* v. *Bettis,* 8 Paige, 568; *Cassilear* v. *Simons,* Id. 273; *Green* v. *Hicks,* 1 Barb. Ch. 309; *Van Alstyne* v. *Cook,* 25 N. Y. 489, 496; *Edmeston* v. *Lyde,* 1 Paige, 637. In the case last cited, the chancellor, speaking of creditors' bills, says:

"When the property has been fraudulently assigned by the debtor, so that he has no legal or equitable rights as against the assignee, it will be necessary to make the assignee a party to enable the court to reach the property in his hands. A decree against the fraudulent assignor *would not in that case give any right to the property in the hands of the assignee.* But when the debtor still retains the legal or equitable interest in the property, such interest may be conveyed to the complainant, or transferred to a receiver under the decree or order of the court."

Unless the fraudulent grantee had been thus made a party to the bill, and the transfer directly assailed, the receiver was liable to an action of trespass for meddling with the property fraudulently transferred, and his appointment as an officer of the court would not be suffered to protect him. *Parker* v. *Browning,* 8 Paige, 388. If property claimed by the judgment debtor was in the possession of another person making claim to it, a receiver would be appointed who might bring suit to try the contested right, representing in that case the judgment debtor only, (*Chipman* v. *Sabbaton,* 7 Paige, 47;) but, so far from there being under the former practice any recognition of a title in a mere receiver, who was appointed upon a bill against the judgment debtor alone, to property which the debtor did not own, but had conveyed away in fraud of creditors, it was to the very last doubted by the chancellor whether such a receiver had any right even to file a bill to impeach such a conveyance. It was for the judgment creditor himself to pursue this remedy. *Green* v. *Hicks,* 1 Barb. Ch. 309, 314.

Since the Code, upon the same doubts, such bills have been dismissed as unauthorized, (*Seymour* v. *Wilson,* 16 Barb. 294; *Haynor* v. *Fowler,* 16 Barb. 300,) and in *Hyde* v. *Lynde,* 4 Comst. 387, *Bronson,* C. J., says: "A receiver of the effects of such a [fraudulent] grantor could not avoid the grant." Page 393. In the case of *Porter* v. *Williams,* 5 Seld. 142, it was, however, finally determined that the re-

ceiver, *as the representative of the creditor*, might maintain such a bill to impeach the fraudulent conveyance as the creditor himself might have done.    The ground of the right of action thus allowed is not that the receiver already has the title to the property, but only that he represents the creditor, and as such has a right to assail the fraudulent grant by suit.    The creditor, however, has no title to the property, nor has he even any lien upon it, until he files his bill, or levies his execution if the property be chattels.    *Lawrence* v. *Bank of Republic*, 35 N. Y. 320.

As stated before, the Code adopted the former practice as to receivers, with no substantial enlargement of their powers.    By the old Code, § 298, the receiver, on filing the order appointing him, is vested "with the property and effects of the judgment debtor."    Section 299 (see new Code, § 2447) expressly declared that "if it appear that a person alleged to have property of the judgment debtor claims an interest in the property adverse to him, such interest shall be recoverable only in an action against such person by the receiver."    Accordingly, the unqualified language of section 297, which authorized the court to apply to the satisfaction of the judgment "any *property of the judgment debtor* in the hands of himself or any other person," has been construed to mean only property of which the debtor was the unquestioned owner, not including property fraudulently conveyed.    *Rodman* v. *Henry*, 17 N. Y. 484; *Lathrop* v. *Clapp*, 40 N. Y. 328, 333.    The same construction and the same limitation would seem to be applicable to the same words of section 298, which purport to vest the receiver "with the property and effects of the judgment debtor," so that they cannot be held to effect any transfer, *ipso facto*, of a present title to property which has been conveyed by the debtor in fraud of creditors.

The uniform course of adjudication since the Code is to the same effect, wherever the question has been really presented.    If the receiver, by virtue of his appointment, were *ipso facto* vested with the title to such property, the proceedings appointing him would be a good defence to an action of trespass for taking the property.    Where the receiver obtains a *title* direct from the judgment debtor it has been held that he can maintain trover for conversion of the property.    *Wilson* v. *Allen*, 6 Barb. 542.    But as respects property fraudulently assigned by the debtor, he has no such title as will protect him against an action of trespass.

In *Brown* v. *Gilmore*, 16 How. Pr. 527, this precise question arose in a suit for trespass where the defendants, the agents of a receiver,

undertook to justify by pleading the receiver's authority, and alleged title to the property taken. *Emott*, J., says:

The defendants have not the right to litigate that question in the present action, but only the validity of the sale *inter partes*. The receiver not only stands in the place of the debtor, but represents creditors, and can, therefore, in a proper way impeach fraudulent acts of the debtor; but in neither capacity could the receiver justify the forcible seizure of this property if it had been sold to the plaintiff by an actual and complete transfer, so as to make a valid sale between him and his vendor. The receiver could not question such a transfer as representing the judgment debtor, * * * nor could such a defence be interposed in this suit by this officer as representing the creditors; because this property, even if transferred with a design to delay and defraud them, did not for that reason belong to them, so that they or their representatives could exercise an immediate control over it. * * * Until an execution is levied upon personal property the judgment creditor has no right in it or control cover it. But the receiver *does not stand in the place of an execution.* The only way he can intervene in behalf of creditors in such cases is by instituting a suit to impeach and set aside the validity of such transfers.

To the same effect is *Teller* v. *Randall*, 40 Barb. 242, and *People* v. *King*, 9 How. (N. Y.) 97.

In *Bostwick* v. *Menck*, 4 Daly, 72, *Robinson*, J., says:

" The fraudulent assignor could not impeach his own assignment, nor could any other person do so except as a creditor by judgment, after execution thereon had been returned unsatisfied, who should by his own suit, or through a receiver appointed in his behalf, evince his dissent thereto by assailing it in a direct proceeding instituted for the purpose of avoiding it."

In the superior court it has been still more explicitly decided that the receiver has no title nor *lien* in respect to such property until the commencement of his suit. *Fields* v. *Sands*, 8 Bosw. 685; *Conger* v. *Sands*, 19 How. (N. Y.) 8.

In *Fields* v. *Sands* the court say:

"Such proceedings (supplementary) no more create a lien upon the assigned property than would a judgment creditor's suit against the debtor only. Such proceedings do not affect property vested in a third person. * * * The receiver merely obtains authority to litigate the validity of the transfer by a suit against the assignee."

In *Bostwick* v. *Menck*, 40 N. Y. 383, the receiver had been appointed upon a small judgment of $200. In setting aside a fraudulent assign-ment he had recovered by the judgment below the whole assigned property, some $15,000, upon the theory that he was vested with the title of the whole property in trust for all the creditors. This judgment was reversed, and his recovery limited to the amount of the

judgment on which he was appointed. The question necessarily involved the nature and extent of a receiver's claim, by virtue of his appointment as receiver, upon property fraudulently assigned. In the opinion of the court, *Grover*, J., says:

"He acquires no right to the property (fraudulently assigned) by succession to the rights of the debtor ; * * * no rights (*i. e.*, of property) other than those of the debtor are acquired. *He does not acquire the legal title to such property by his appointment. That is confined to property then owned by the debtor;* and the fraudulent transferee of property acquires a good title thereto as against the debtor and all other persons, except the creditors of the transferror. *The only right* of the receiver is, therefore, as trustee of the creditors. The latter have the right to set aside the transfer and to recover the property from the fraudulent holder ; and the receiver is by law invested with all the rights of all the creditors represented by him in this respect. It is clear that the right of the receiver, representing the creditors and acting in their behalf, *is no greater than that of the creditors.*" "They, (the assignees,)" he continues, "have the right to retain the property until the superior right of creditors to divest them of it is shown. This right of creditors they have the right to litigate in respect to each creditor." Pages 385, 386.

In the court below it was not held that the receiver took title to such property upon his *appointment,* but only "upon the court declaring such transfer void." *Bostwick* v. *Beiser*, 10 Abb. 197. Not only is the whole reasoning and language of the opinion in the court of appeals very clear that no title vested in the receiver to such property by the mere fact of his appointment, but the decision that the receiver can recover only sufficient to satisfy the particular debt set forth in the bill, is incompatable with his having any general title to the whole assigned property; and if he has no title to the whole, there is no specific part which he can separate from the rest to which he can lay any claim of title.

Such fraudulent transfers, therefore, are no more absolutely void as respects such a receiver than as respects judgment creditors themselves. They are avoidable only when assailed at the election of the creditor or receiver, in an action brought for the specific purpose of setting them aside. High, Rec. § 411. "There is nothing in this respect that a receiver might do that the creditor himself cannot do." *Dollard* v. *Taylor*, 33 Superior Ct. R. 496, 498. In *Becker* v. *Torrance*, 31 N. Y. 637, the court say "the officer [court] could do nothing except to appoint a person [receiver] who should represent creditors by commencing and prosecuting such a suit." And in *Underwood* v. *Sutcliffe*, 77 N. Y. 62, *Andrews*, J., says:

"A receiver is regarded as the representative of the creditor in whose behalf he is appointed for the purpose of maintaining an action to avoid fraudulent transfers by the debtor of his property. He may disaffirm his acts, and in doing so he acts as the trustee for creditors."

From this examination it seems clear that a receiver appointed in supplementary proceedings cannot be held to be vested, by virtue of his appointment, with the title to property fraudulently conveyed by the judgment debtor. The court which appoints him cannot, as we have seen, put him in possession of such property. It will not authorize his meddling with it, nor protect him if he do so. If he interfere with it by his own act, or that of his agents, he is liable as a trespasser for its value. He may assail the fraudulent transfer by action, as the creditor himself might do, and not otherwise; and he cannot recover more than the individual creditor could recover in a similar action. He may take no steps to set the fraudulent transfer aside until long after his appointment. In the present case it was nearly six months afterwards. Dealings with the property by the voluntary assignee, in the mean time, are valid. Sales pass a good title to the purchaser, (*Barney* v. *Griffen,* 4 Sandf. Ch. 652; *Wakeman* v. *Grover,* 4 Paige, 42; *Pine* v. *Rikert,* 21 Barb. 469; *Okie* v. *Kelly,* 12 Pa. St. 323, 327;) and even the proceeds of such sales, if disbursed according to the terms of the assignment, cannot be reached, nor the assignee held accountable therefor. *Averill* v. *Loucks,* 6 Barb. 477; *In re Wilson,* 4 Bank. 430; and cases last above cited. All the essential attributes of a title, or even of a specific lien, in the receiver during that period are therefore wanting, for a specific lien could not be thus divested. *Murray* v. *Ballou,* 1 Johns. Ch. 577, 580; *Sheridan* v. *Andrews,* 49 N. Y. 480–483. His right is a right of action only, like that of the creditor whom he represents. He has no title until so adjudicated, or until he is appointed receiver in an action brought to set aside the conveyance. If he sleep upon his rights they will be lost. Until he acquires title or a specific lien by such a suit, his right of recovery is liable to be defeated by the same contingencies which would defeat a creditor pursuing the same remedy. Among these contingencies are a prior sale and distribution of the property by the assignee, a levy by any other execution creditor, (*Storm* v. *Waddell,* 2 Sandf. Ch. 494; *Cuyler* v. *Moreland,* 6 Paige, 273; *Lansing* v. *Easton,* 7 Paige, 364; *Storm* v. *Badger,* 8 Paige, 129; *Becker* v. *Torrance,* 31 N. Y. 631; *Davenport* v. *Kelly,* 42 N. Y. 193; *In re Pitts,* 9 Fed. Rep. 542,) or an adjudication in bankruptcy.

Such an adjudication prior to the filing of the bill operates as an immediate sequestration of the debtor's effects to the use of creditors, and cuts off the receiver's inchoate right of action as it does that of the creditor himself. *Johnson* v. *Rogers,* 15 N. B. R. 1. Up to that time the receiver in this case had done nothing evincing any dissent to the assignment. As receiver he might have already acquired other property belonging to the judgment debtor sufficient to satisfy the judgment upon which he was appointed receiver; and in that case he would have had no inducement, nor even any legal right, to assail the questionable title of an alleged fraudulent grantee; or he might doubt his ability to make such an attack successfully. Though voidable, the fraudulent transfer was not void; and it might be acquiesced in by him, or by the creditor whom he represented, at his election. *Rapalee* v. *Stewart,* 27 N. Y. 310; *Babcock* v. *Dill,* 43 Barb. 577.

The title to this property, therefore, necessarily remained in the voluntary assignee until it was legally avoided, or until due legal steps were taken by the receiver for that purpose; and no lien could be acquired by the receiver until he gave notice of his election and intention to avoid it, or by suit brought for that purpose. *Weed* v. *Pierce,* 9 Cow. 728, 729; *Becker* v. *Torrance,* 31 N. Y. 636, 639; *Okie* v. *Kelly,* 12 Pa. St. 323; *Field* v *Sands,* 8 Bosw. 685; *Conger* v. *Sands,* 19 How. Pr. 78.

Before any such steps were taken the right to the property was, by section 5046, vested in the assignee in bankruptcy and thereafter the latter, according to the decisions of the supreme court above cited, had the exclusive right to take proceedings to avoid the assignment.

4. To warrant the court in setting aside an assignment for the equal benefit of all creditors, at the suit of one creditor seeking to appropriate the whole assets to his own claim, the proofs of fraudulent intent must be clear and convincing. Prominent among the proofs urged in this case is the fact alleged that the debtor, by means of an answer without merits and through dilatory proceedings, delayed the recovery of the creditor's judgment as long as it was in his power, and made the assignment only at the last moment prior to the recovery of the judgment, which could no longer be postponed. An assignment under such circumstances for the equal benefit of creditors, or a petition in bankruptcy, was rather the duty of the debtor than evidence of fraudulent intent. 2 Spence, Eq. Juris. 350; *Mayer* v. *Hellman,* 91 U. S. 500; *Hauselt* v. *Vilmar,* 2 Abb. (N. C.) 222. If the assignment is legally complete and perfect, and is intended to devote, and does

devote, all the debtor's property to the payment of his debts, it cannot be invalidated through the subsequent remissness or inefficiency of the assignee. Creditors have ample remedy against the assignee for his misconduct, if any; and they should be held to these remedies, rather than be allowed to subvert the assignment on the claim that such remissness is an evidence of original fraudulent intent. *Hardman* v. *Bowen*, 39 N. Y. 196, 200; *Schults* v. *Hogan*, (N. Y. Ct. of App.) 12 N. Y. Weekly Dig. 463. This principle covers most of the other objections urged against this assignment. They relate almost exclusively to the subsequent conduct of the assignee. The assignee was a son-in-law and clerk of the debtor. His business had been that of carrying on a tannery. At the time of the assignment there was considerable stock, in the various stages of manufacture, and an outstanding contract of the debtor for the manufacture of leather for mail-bags, which it was deemed prudent to fulfil. For this purpose the assignee had a right to continue the employment of the hands then about the tannery and also to employ the assignor. I do not find from the evidence that the business was continued beyond what was necessary in fulfilling this contract, and working up the stock on hand, or that this was disadvantageous to the estate. The debtor had also, the year prior to the assignment, given to the assignee a chattel mortgage, which was a second lien upon his stock in trade, and which was doubtless invalid as against an execution creditor; and shortly before the assignment he had also given him a bill of sale of some other articles unencumbered. From the testimony of the assignee, who was called by the complainant, a full and valuable consideration for both of these was proved.

The change of possession was all that the circumstances required. The assignment was immediately recorded, and was notorious. The assignee swears he took immediate possession. He notified the hands, and paid them; he bought and sold goods, and advanced his own moneys in part upon necessary purchases; he changed his billheads; opened a new set of books as assignee, and a new bank account where deposits were made.

The real estate of the debtor was mortgaged to its full value, and was afterwards foreclosed without any surplus. For such portion as was occupied by the debtor, it was proved that he accounted to the assignee for its full rental value.

The evidence discloses a number of details of an unsatisfactory character. Information given by the assignee was in several particulars less definite than he ought to have been able to furnish. The

winding up of the business was in a considerable measure entrusted to the assignor, who was employed by the assignee; but I do not find sufficient evidence to show that the assignor was either overpaid for his services, or that the assignment was made, or was intended to be made, subsidiary to his own purposes.    Whatever errors existed seem to me errors in management rather than in anything belonging to the assignment in its inception.    The plaintiff shows various circumstances raising doubts of good faith, but he called the defendants as his own witnesses. He is bound by their answers where not shown erroneous, and they have given their answers to such suspicious circumstances. The proofs do not go beyond suspicion, and this is not enough.    The bonds required from the assignee furnish security to the creditors for a true account by him of the assets coming to his hands, or with which he is justly chargeable, and for the faithful discharge of his duties.

I do not think I should be justified, either upon the law or the facts, in setting the assignment aside as fraudulent against creditors, and the bill must therefore be dismissed, with costs.